## APPEAL OF EMERSON ELECTRIC MANUFACTURING CO.

Docket No. 1010.   Submitted November 17, 1925.   Decided February 19, 1926.

1. Commissions paid to brokers for the sale of the capital stock of a corporation are not deductible as ordinary and necessary expenses of carrying on a trade or business.

2. Fees paid to lawyers for negotiating the sale of the capital stock of a corporation and for securing an amendment to its charter to authorize an increase in its capitalization are not deductible as ordinary and necessary expenses of carrying on a trade or business.

3. Fees paid to the State of Missouri for amending taxpayer's charter to increase its capitalization are not taxes deductible under section 234(a) (3), but are capital expenditures.

*William F. Fahey, Esq.*, for the taxpayer.
*Robert A. Littleton, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

This is an appeal from the determination of a deficiency in income and profits taxes for the fiscal year ended September 30, 1920, in the amount of $44,394.46. The deficiency arises from the refusal of the Commissioner to allow as deductions the amount of $104,501.25 paid as brokers' commissions, attorneys' fees, and fees to the State of Missouri incident to the increase in the capital stock of the taxpayer and the issue and sale of certain of its preferred stock.

### FINDINGS OF FACT.

The taxpayer was incorporated under the laws of the State of Missouri in September, 1890. Its original capital was $50,000, which was increased to $75,000 in 1892, to $300,000 in 1901, to $600,000, in 1907, to $800,000 in 1917, and to $2,800,000 in November, 1919. Some of the increases in capitalization prior to November, 1919, were due to the issuance of stock dividends. It was the practice of the corporation to charge to expense all expenditures incurred incident to the increase of its capital stock. The greatest expense incident to an increase of its capital stock prior to the increase of November, 1919, did not exceed the sum of $360.

The increase authorized in November, 1919, took the form of 20,000 shares of preferred stock of the par value of $100 each, carrying 7 per cent cumulative dividends. The stock was callable at the option of the taxpayer at the price of $115 per share and accrued dividends to the date of redemption. The firm of Spencer Trask & Co., a copartnership, subscribed for 10,000 shares of the authorized increase in the capital stock of the corporation of the par value of $1,000,000. An agreement existed between the taxpayer and the firm of Spencer Trask & Co. whereby the latter agreed to sell and distribute the $1,000,000 of preferred stock. This agreement was fully complied with, and thereafter, during the taxable year, Spencer Trask & Co. paid to the taxpayer $1,000,000 in cash and received from it $100,000 as a commission for selling and disposing of this stock as agreed.

The taxpayer, during the same year, paid to the law firm of Koerner, Fahey & Young the sum of $3,500, for legal services rendered in connection with its negotiations with Spencer Trask & Co. and the amendment of its charter authorizing an increase of its capital stock.

During the taxable year in question, the taxpayer paid to the State of Missouri, as fees in connection with the amendment of its charter, the sum of $1,001.25, without which payment it would not have been authorized to sell its stock.

The business of the taxpayer had increased to such volume that it was necessary and expedient for it to acquire additional capital, and it procured such capital by the sale of its preferred stock on the advice of its bankers, lawyers, and stockholders. In order to sell such stock, it was necessary for the taxpayer to employ persons engaged in the business of stock selling, as the taxpayer was not familiar with this line of work. Under the laws of Missouri, if the consideration received for stock is cash, cash must be received by the corporation in the full amount of the par value of the stock issued.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

ARUNDELL: The taxpayer claims as a deduction from its gross income for the fiscal year ended September 30, 1920, the amount of $104,501.25 paid for the purposes set forth in the findings of fact. The major item is the sum of $100,000 paid to Spencer Trask & Co. incident to the marketing of the taxpayer's preferred stock of the par value of $1,000,000. The entire issue of 10,000 shares was subscribed for by Spencer Trask & Co., which paid the taxpayer in payment therefor $1,000,000. Under the laws of Missouri, if stock is issued for cash, it is necessary that the corporation receive cash in an amount not less than the par value of the stock issued therefor. It was by reason of this provision of the statute that the transaction took the form of the payment to the taxpayer by Spencer Trask & Co. of the full sum of $1,000,000 and a check by the taxpayer to the brokers in the sum of $100,000.

If the amount so paid to the brokers is deductible, it is by reason of section 234 (a) (1) of the Revenue Act of 1918, which provides that there shall be allowed as deductions, " all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered." The taxpayer contends that, the securing of additional capital in order to efficiently operate its business being absolutely necessary, the expenses incident thereto were not only necessary, but, in the cirmcumstances, ordinary expenses; and, further, that the amount paid to the brokers represented " other compensation for personal services actually rendered " and, therefore, constituted a proper deduction from income.

That the amount paid to Spencer Trask & Co. for services rendered in connection with the flotation of the taxpayer's capital

stock represented compensation for personal services actually rendered is true, but that does not of itself bring the expenditure within the category of deductible expenses contemplated by the statute. The word "including," as used in the clause "including a reasonable allowance for salaries or other compensation," signifies the intent to include as deductible expenses only such salaries or other compensation as are ordinary and necessary expenses in carrying on a trade or business.

The use of capital is ordinarily and generally necessary in the conduct of a business enterprise, but it does not follow that the expense incident to its procurement is an ordinary and necessary business expense within the purview of the statute.

Expenses incurred by a corporation in selling its capital stock, the proceeds from which are to be permanently invested in property or otherwise used in the operation of the business, subject to all its risks and hazards, are not deductible expenses, for the reason that such expenses are incurred in connection with a capital transaction. The only effect of expenses of this character, as in the case of discount at which the shares of stock may be sold, is to reduce the capital available to the corporation, and they can not be used to reduce the income from operations. They represent a capital expenditure which should be charged against the proceeds of the stock and not recouped out of operating earnings. Further, it is clear to us that the revenue of a day or a year should not be burdened with the cost of acquiring additional capital, the benefits from which will inure the corporation over a long period of years. This is the doctrine generally recognized and adopted in the treatment of expenses incident to the procuring of temporary capital through the flotation of bonds and other term securities, and in such cases the expenses are written off over the life of the indebtedness.

We think it is perfectly clear that the amount received by a corporation in excess of the par value of its stock is not income to the corporation, but is in fact a paid-in surplus, and that the converse is equally true, that when stock is sold for less than its par value the corporation has not suffered a loss. *Appeal of Simmons & Hammond Manufacturing Co.*, 1 B. T. A. 803. It is contended, however, that this is not a case where stock is sold for less than par, but that the taxpayer in fact received $1,000,000 and thereafter paid out $100,000 as expense incurred in its sale and distribution. Obviously the net result to the corporation is the same whether it sells its stock to a broker at a discount or whether it sells the stock through salesmen employed for the purpose and pays a salary or other compensation for their services.

What has been said with reference to the payment of $100,000 incident to the sale of the taxpayer's preferred stock is equally true of the item of $3,500 paid for legal services in connection with the taxpayer's negotiations with the brokers and in the amendment of its charter authorizing the sale of its stock. Such an item is, in our opinion, a capital expenditure and not an ordinary and necessary expense of carrying on a business, and is, therefore, not deductible.

The fees paid to the State of Missouri, in the amount of $1,001.25, in connection with the amendment of the taxpayer's charter in order that it might increase its capitalization, is not a tax, but is a fee, and as such is deductible only if it falls within the provisions of section 234 (a) (1). For the reasons heretofore advanced, we are of the opinion that this item is a capital expenditure and not an ordinary and necessary expense. *Appeal of Logan-Gregg Hardware Co.*, 2 B. T. A. 647.