Considered by STERNHAGEN and GREEN.

---

WILLIAM CLUFF CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7242.   Promulgated July 14, 1927.

1. In the circumstances, *held*, that a certain contract between petitioner and preferred stockholders does not constitute the latter creditors of the petitioner.

2. Amounts paid to holders of preferred stock during the taxable year represented the payment of a dividend and not interest on an indebtedness.

3. Discount allowed and expenses incurred in the issue and sale of preferred stock may not be taken as a deduction from gross income. *Appeal of Emerson Electric Manufacturing Co.*, 3 B. T. A. 932.

*Frederick C. Rohwerder, Esq.*, for the petitioner.
*Robert A. Littleton, Esq.*, for the respondent.

This proceeding is for the redetermination of a deficiency in income and profits taxes duly asserted by the respondent for the fiscal year ended August 31, 1920, in the amount of $1,094.62. The petitioner alleges that, in determining the deficiency, the respondent erred in the following particulars: (1) In considering and treating the preferred stock, issued by the petitioner as hereinafter set forth, and which the petitioner alleges represented borrowed capital, as a part of the petitioner's capital stock, thereby including it in invested capital; (2) in disallowing as a deduction from gross income for the taxable year the amount of $23,488.88 paid and accrued during that year, which amount it is alleged, represented interest on the borrowed money represented by the preferred stock; (3) in disallowing as a deduction from gross income for the taxable year the amount of $1,783.76 which amount, it is alleged, represented a proportionate part of the discount allowed and expenses incurred in the issue and sale of the preferred stock as hereinafter described.

On leave granted, the respondent amended his answer and in his amended answer it is alleged that he erred in computing the petitioner's invested capital for the taxable year in question, in that the full amount of the 1919 Federal taxes paid by the petitioner, to

wit, $34,528.77, should have been excluded from the petitioner's invested capital in lieu of the prorated amount, to wit, $14,552.15, as determined in his deficiency letter.

The facts were stipulated.

### FINDINGS OF FACT.

The petitioner is engaged in the wholesale grocery business. It was incorporated in November, 1893, under the laws of California and on October 18, 1919, it was reorganized by the formation of a new corporation under the laws of Delaware.

At the time of the reorganization on October 18, 1919, the petitioner's capital stock issued and outstanding consisted of $400,000 par value of common stock. After its reorganization on October 18, 1919, the new corporation (Delaware) issued its common stock of the par value of $400,000 to replace the common stock of the old corporation (California) of the same par value. On October 28, 1919, the new corporation (Delaware) sold for cash 4,000 shares of preferred stock of the par value of $400,000 for the sum of $382,500, thereby suffering a discount of $17,500. In addition to the discount of $17,500 the petitioner incurred expenses in connection with the issue and sale of the preferred stock amounting to $5,133.90.

The purchasers of the preferred stock and the petitioner entered into an agreement which was set forth on the preferred stock certificates and is as follows:

(a) The holders of record of the preferred stock shall be entitled to receive and the corporation shall be bound to pay thereon, when and as determined by the Board of Directors of this corporation, from the surplus or net profits arising from its business, dividends at the rate of seven per cent (7%) per annum, and no more, upon the par value of said stock, from the date of issue, payable in quarterly installments on the 15th days of January, April, July, and October of each year, the first installment being payable on January 15, 1920. The current quarterly dividend upon the preferred stock shall be paid or set apart before any dividends shall be paid or set apart on the common stock. The dividends on the preferred stock shall be cumulative, so that there shall be no dividends paid or set apart on the common stock until after full dividends on the issued and outstanding preferred stock for all previous dividend periods thereof and the current quarter dividend thereon, shall have been paid or set apart. If all dividends on the preferred stock for all previous dividend periods and also the dividend on the preferred stock for the current quarter shall have been paid or set apart, and if all the sinking fund payments hereinafter in paragraph (8) of Article Fourth of this Certificate, provided, which are then due and payable, shall have been paid, then the holders of record of the issued and outstanding common stock may receive, when and as determined by the Board of Directors, such dividends out of the remaining surplus or net profits arising from the business of this corporation as the Board of Directors may deem proper.

(b) In the event of any liquidation or dissolution of the corporation, the holders of record of the issued and outstanding preferred stock shall, before

any distribution shall be made to the holders of common stock, be entitled to be paid out of the surplus or net profits arising from the business of the corporation, and then remaining intact, or in case such profits shall be insufficient, then from the general assets of this corporation, the amount of the unpaid dividends, if any, accrued upon such preferred stock and also the full par value of said stock, and an additional amount equal to two and one-half per cent (2½%) of the par value of the preferred stock which they hold. After such payments to the holders of the preferred stock, the remaining assets and funds shall be divided among and paid equally to the holders of the common stock, according to the number of shares of common stock held by them respectively.

(c) The preferred stock shall have no voting powers at meetings of stockholders, and the holders of said preferred stock shall not, by reason of their holdings thereof, be entitled to a vote at meetings of stockholders, the voting power being vested exclusively in the holders of common stock.

(d) The issued and outstanding preferred stock shall be subject to redemption in whole or in part by the corporation, and the corporation may so redeem said preferred stock by paying to the holders of record of the stock redeemed One Hundred and Two and one-half per cent (102½%) of the par value thereof, and in addition the amount of the dividends, if any, accrued and unpaid thereon to the date of redemption. Whenever the corporation shall desire to redeem any preferred stock, it shall, prior to the date of redemption, cause to be published, once a week for four successive weeks, in a newspaper of general circulation, published in the City and County of San Francisco, State of California, (the first publication to be not more than sixty (60) or less than thirty (30) days prior to the date fixed for redemption), a notice stating that on a certain date and at a certain place named in said notice, the shares of stock specified in such notice will be redeemed, and that there will be due and payable on such stock, at the place specified therein for payment, One Hundred and Two and one-half per cent (102½%) of the par value thereof, and in addition the amount of the dividends, if any, accrued and unpaid thereon, to the date of redemption. A copy of said published notice shall be mailed not less than thirty (30) days and not more than sixty (60) days prior to the date fixed for redemption, to each holder of record of said shares of preferred stock to be redeemed, at his, her or its address, as shown on the books of the corporation; the shares of stock to be redeemed, unless all the issued and outstanding preferred stock is to be redeemed, shall be determined by lot, in such manner as may be determined and provided from time to time by resolution of the Board of Directors, or by the By-Laws of the corporation. The redemption shall be at such time and place as shall be determined by resolution of the Board of Directors of the corporation. From and after the date so fixed as the date of redemption, unless default should be made by this corporation in providing moneys at the time and place aforesaid, for the payment of the redemption price of said stock, all dividends on such preferred stock, so called for redemption, shall cease to accrue, and from and after said date all rights of the holders thereof, including such rights as they may have as stockholders of this corporation, except the right to receive such redemption price and accrued and unpaid dividends to date of redemption, shall cease and determine. All numbers of the certificates of the preferred stock so redeemed, shall be appropriately cancelled on the books of this corporation, and by the Registrar hereinafter referred to, and the stock evidenced thereby shall not be reissued.

(e) While any of said preferred stock shall be issued and outstanding, anything herein contained to the contrary notwithstanding, the corporation, without the written consent of the holders of record of at least three-fourths of the amount of such then issued and outstanding preferred stock, shall not have

the power: (a) to create any shares of stock which shall be in any respect on a parity with or have any preference or take priority over the preferred stock of the corporation; (b) to create any lien upon the real or personal property of the corporation, including stocks and securities, or any part thereof, for the purpose of securing an issue of bonds or other obligations, except that property may be acquired by this corporation, subject to a purchase money mortgage or lien; (c) to create any unsecured indebtedness maturing later than one (1) year from the date of issue; (d) to sell or otherwise dispose of by conveyance, transfer, lease, or mortgage, the property or business of this corporation to any extent that will impair the efficiency of this corporation as a going concern; (e) to alter in any manner the rights or preferences of the preferred stock; (f) to permit any subsidiary corporation to create or issue any additional shares of stock, unless this corporation shall simultaneously with such creation or issue, acquire its proportionate part thereof; the term "subsidiary corporation" whenever used herein shall be deemed to mean any other corporation, a majority of the capitol stock whereof is owned by this corporation.

(f) The corporation shall, so long as any shares of said preferred stock remain outstanding, maintain at all times an excess of its current assets over all of its current liabilities, equal to at least one hundred and fifty (150) per cent of the aggregate value of said preferred stock then outstanding, the terms "current assets" and "current liabilities" being more particularly defined in the Certificate of Incorporation of this corporation.

(g) This corporation shall create a sinking fund with the Bank of California, National Association, of San Francisco, as Trustee, into which the corporation shall deposit annually, commencing with the first day of November, 1921, the following sums of money: November 1, 1921, $20,000; November 1, 1922, $20,000; November 1, 1923, $25,000; November 1, 1924, $25,000; November 1, 1925, $25,000; November 1, 1926, $25,000; November 1, 1927, $25,000; November 1, 1928, $25,000; November 1, 1929, $25,000; November 1, 1930, $30,000; November 1, 1931, $30,000; November 1, 1932, $30,000; November 1, 1933, $30,000; November 1, 1934, $30,000; November 1, 1935, $30,000; November 1, 1936, $15,000.

The corporation may pay the whole or any part of the moneys herein provided to be deposited prior to the respective dates when the same become due.

The money so deposited in the sinking fund, until set apart for the redemption of preferred stock by the corporation, as hereinafter provided, shall be forthwith used by the trustee to purchase for redemption any of the then issued and outstanding preferred stock of the corporation obtainable in the open market for any price not to exceed One Hundred and Two Dollars and Fifty Cents ($102.50) per share, and all stock so purchased shall be delivered to the corporation to be cancelled and shall not be reissued.

At any time after the expiration of thirty days from the date of the deposit by the corporation of any money into the sinking fund, the trustee, upon the written request of the corporation, shall set apart for the redemption of the preferred stock by the corporation as provided in paragraph (d) hereof, such money or any part thereof, which up to the date of said written request by the corporation, may not have been used or applied by the trustee for the purpose of purchasing preferred stock as hereinabove provided. The moneys so set apart, pursuant to any such request, shall be used forthwith by the corporation for the exclusive purpose of redeeming the preferred stock in the manner provided in paragraph (d); provided, however, that the money so used by the corporation for redemption shall be applied only for the payment of One Hundred and Two and one-half per cent (102½%) of the par value of the stock redeemed; and any payments which may be required to be made on account of accrued and unpaid dividends shall be paid from the surplus or net profits of the corporation.

The request, in writing, in the name of the corporation by its President or Vice-President, and its Secretary, under its corporate name and seal, together with a certified copy of a resolution of the Board of Directors authorizing the execution of such written request, and authorizing the redemption of the preferred stock with the moneys requested to be set apart, shall be full and complete warrant and authority to the trustee to set apart any of the moneys in the sinking fund for the purpose of such redemption as hereinabove provided, and for the payment of such moneys for the redemption of the preferred stock.

In the event that the corporation default in the payment of any of the sums of money herein provided to be deposited by it in the sinking fund, the payment thereof shall be enforceable by the trustee in the same manner as the payment of any unconditional claim or debt against the corporation; and said trustee must, upon the written consent of one-third ($\frac{1}{3}$) of the holders of record of the then issued and outstanding preferred stock, and upon being indemnified to its entire satisfaction, proceed to enforce the payment of said unpaid sum or sums, as hereinabove provided.

(h) The trustee of the sinking fund shall also act as Registrar, for the purpose of registering and recording in a book kept by it for that purpose, the issuance, transfer, and cancellation of the shares of preferred stock, and the names of the holders of record thereof, and no certificate or other instrument evidencing the issuance by the corporation of shares of the preferred stock shall be issued or be valid or binding upon the corporation unless the fact of the registration of the shares of preferred stock, so issued or transferred and evidenced thereby, shall appropriately appear on the face of such certificate or instrument over the name of the trustee.

(i) Within ninety (90) days after the close of each fiscal year, the corporation shall prepare or cause to be prepared, and shall file with the trustee of the sinking fund, an itemized statement of the income account of the corporation for such year, and a balance sheet taken at the close thereof, which balance sheet shall be certified by some responsible certified accountant or firm of accountants of national reputation. The balance sheet shall set forth the financial condition of the corporation, and among other things shall show first, its current assets at not to exceed their actual value, and second, the amount of all its liabilities. While any of the preferred stock of the corporation is issued and outstanding, there shall remain on file with the trustee, a certified copy of the Certificate of Incorporation of the corporation, and any amendments thereof.

Any holder of record of the preferred stock shall be entitled during usual business hours to inspect said itemized statement or said Certificate of Incorporation at the place of business of the trustee.

(j) The trustee shall not be answerable for anything whatsoever in connection with its duties and the trusts hereby created except its own wilful misconduct or gross negligence. The trustee may at any time resign; the Board of Directors of the corporation may remove the trustee and, in the event of its resignation or removal, substitute another trustee in its place and stead, upon the affirmative vote or written consent to such removal or substitution of two-thirds ($\frac{2}{3}$) of the holders of record of the then issued and outstanding shares of common stock of the corporation and the consent in writing to such removal and substitution by not less than three-fourths ($\frac{3}{4}$) of the holders of record of the then issued and outstanding preferred stock. Upon the resignation or removal of the trustee, and the substitution of another trustee in its place and stead, the new trustee so substituted shall become vested with all the rights, duties, moneys, and trusts hereunder of the former trustee with like effect as the original trustee named in this Certificate.

The petitioner, in its return for the fiscal period ended August 31, 1920, deducted from gross income the amount of $23,488.88 paid or accrued to the holders of the preferred stock during the period in question, which amount the petitioner designated as interest. The petitioner for the fiscal period ended August 31, 1920, also deducted from gross income the amount of $1,783.76, the proportionate part, based on the agreement with the purchasers of the preferred stock of the discount in the amount of $17,500 and the expenses in the amount of $5,133.90. The petitioner did not include in its invested capital any part of the proceeds from the sale of the preferred stock in the amount of $382,500.

Upon audit of the petitioner's return for the fiscal period ended August 31, 1920, the Commissioner disallowed as a deduction from gross income the amount of $23,488.88, alleged by the petitioner to represent interest paid or accrued to the holders of the preferred stock during the taxable period in question, and he also disallowed as a deduction the amount of $1,783.76, being the proportionate part of the discount and expenses in respect of the issue of the preferred stock. The proceeds from the issue and sale of the preferred stock in the amount of $382,500 were prorated by the Commissioner from October 28, 1919, to August 31, 1920, and the amount of $322,930.33 was included in the petitioner's invested capital for the fiscal period ended August 31, 1920. The Commissioner also included in the petitioner's invested capital, for the period ended August 31, 1920, the amount of $14,552.15, being "1919 tax" $34,528.77 prorated to the date payable.

OPINION.

LOVE: The petitioner contends that the holders of the preferred stock, issued in the form and amount as set forth in the findings of fact, are its creditors and not its stockholders.

The respondent takes the position that the holders of the preferred stock were stockholders and has disallowed for that reason the deductions claimed by the petitioner, and has included in the petitioner's invested capital the prorated proceeds of the sale of the preferred stock. If the holders of the preferred stock are stockholders and not creditors of the petitioner the respondent did not err in disallowing the deduction claimed in the amount of $23,488.88 for the reason that that amount represented dividends paid and accrued to the preferred stockholders. *Arthur R. Jones Syndicate* v. *Commissioner*, 5 B. T. A. 853; neither did he err in disallowing the deduction claimed on account of discount at which the preferred stock was sold, nor on account of the expenses incident to the issue and sale of the preferred stock. *Appeal of Emerson Electric Manu-*

*facturing Co.*, 3 B. T. A. 932. We must look solely, therefore, to the contract between the petitioner and the holders of the preferred stock in order to determine the relationship existing between them. The contract between the petitioner and the holders of the preferred stock is set out above, and stated briefly, it provides that 7 per cent cumulative dividends shall be paid to the preferred stockholders out of surplus or net profits when and as determined by the board of directors; that upon dissolution of the petitioner dividends accrued and unpaid shall be paid out of general assets, if the surplus is insufficient, and also that the stock shall be redeemed at $102.50 per share; that the preferred stock shall have no voting rights; that while any preferred stock is outstanding the petitioner can not, except under certain conditions, create any shares having priority over the preferred stock, can not mortgage any of its property or issue bonds secured by mortgage or create any unsecured indebtedness maturing later than one year from the date of issue or do anything that would impair its efficiency as a going concern; that an excess of current assets over current liabilities must be maintained in an amount of at least 150 per cent of the preferred stock outstanding; that a sinking fund must be established for the purpose of redeeming the preferred stock and into which the petitioner must pay specified sums annually; that the preferred stock shall be subject to redemption at $102.50 per share plus accrued dividends upon certain notice given.

In the *Appeal of I. Unterberg & Co.*, 2 B. T. A. 274, we stated:

It can not be doubted that the nature of an instrument may, because of its terms and the circumstances of its issuance and subsistence, be held to be different from what it is denominated. The decisions are numerous in which the courts have held bonds to be stock * * *.

Considering the contract between the petitioner and the preferred stockholders, we are of the opinion that there is nothing therein which takes the holders of the preferred stock out of the class of stockholders. To be sure the holders of this class of stock are preferred in such a manner that they are almost certain to have their stock redeemed. However, a preference over common stockholders makes them none the less stockholders. It appears to us that the contract between the petitioner and the preferred stockholders evidenced only an intention to create and maintain a preference in favor of the preferred as against the common stock.

In *Arthur R. Jones Syndicate* v. *Commissioner, supra*, we stated that the fundamental characteristic of a share of stock is that the holder is a coowner of the business and not a creditor and that a share of stock carries the right to share in surplus profits and assets after corporate debts are paid. In the instant appeal it is clear that at any time before dissolution of the petitioner dividends were

to be paid only out of surplus and net profits, and upon dissolution the preferred stock would be preferred as against the common stock in the distribution of assets. It is equally clear that corporate debts would have to be paid first.

The case of *Spencer* v. *Smith*, 201 Fed. 647, dealt with the question as to whether holders of preferred stock which was secured by a mortgage on the corporation's property were stockholders or creditors of the corporation. The court decided that corporate preferred stock which guaranteed 10 per cent out of net profits, reserved the corporation the right to redeem after a specified date, bound it to redeem before a later date, and provided that the holders on failure to pay dividends, might foreclose a trust mortgage given to secure the stock on all the corporation's property, in which the preferred stockholders were entitled to participate ratably, did not constitute the holders thereof creditors of the corporation even though upon dissolution of the corporation and distribution of the assets the preferred stockholders were given a preference of $11 per share. In considering the case the court stated:

We are therefore of the opinion that the present holders of the preferred stock of the corporation are not creditors thereof, but stockholders; that the provision contained in the certificate of the preferred stock, giving a preference of eleven dollars per share to the holders thereof, refers only to the distribution of assets as between stockholders, and has no reference to the distribution of assets for the payment of the debts of the corporation; that, if by any interpretation it could be construed as referring to the distribution of assets to pay debts, then it is void as against public policy. These views are sustained by an examination of the certificate of stock and the decisions of the courts. What parties to a contract may call it, of course, is not binding upon the courts if it is clearly something else. Still in arriving at the intention of the parties, we may look to the language which they used in reducing their contract to writing.

\* \* \* \* \* \* \*

If thereafter the corporation made profits, the holder of any preferred stock would receive dividends; and if at any time the corporation was dissolved and its assets were distributed, the preferred stock would be preferred as against the common stock. The performance of this agreement could be and was secured by a mortgage. This view renders the transaction reasonable and valid.

Examining, in the light of principles laid down, the provisions contained in the agreement between the petitioner and preferred stockholders, we are of the opinion that the preferred stock did not represent merely an indebtedness of the petitioner to the holders thereof, but, on the contrary, represented shares in the petitioner's business. The amount of $23,488.88 paid and accrued to the holders of preferred stock during the year in question constituted, therefore, dividends, and as such is not deductible. The determination of the respondent in disallowing the deduction taken on account of discount

and expenses with respect to the preferred stock issued by the petitioner is also approved.

The respondent alleges in his amended answer that he erred in computing the petitioner's invested capital for the taxable period ended August 31, 1920, in that he excluded therefrom only the prorated amount of the 1919 Federal taxes paid by the petitioner instead of the full amount thereof. In the *Appeal of Russel Wheel & Foundry Co.*, 3 B. T. A. 1168, we held that adjustments made in accordance with article 845, Regulations 45, Revised January 28, 1921, were correct and accordingly approved the exclusion from invested capital for a taxable year the prorated amount of Federal taxes for the preceding year which are due and payable. We, therefore, affirm the determination made with respect to the petitioner's invested capital for the period ended August 31, 1920.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by TRUSSELL and LITTLETON.