FIREMEN'S INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MECHANICS INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 53679, 53680, 56379, 56380, 64419.   Promulgated June 26, 1934.

*William Ristig, Esq.,* and *Ernest C. Lum, Esq.,* for the petitioners.
*J. Arthur Adams, Esq.,* and *Frank A. Surine, Esq.,* for the respondent.

#### OPINION.

TRAMMELL: These proceedings, which were consolidated for hearing, are for the redetermination of deficiencies in income tax as follows:

| Petitioner | Docket No. | Year | Deficiency |
|---|---|---|---|
| Firemen's Insurance Co | 53679 | 1927 | $8,288.31 |
| Do | 56379 | 1928 | 194,255.53 |
| Do | 64419 | 1929 | 9,446.60 |
| Mechanics Insurance Co | 53680 | 1927 | 34,274.03 |
| Do | 56380 | 1928 | 16,268.53 |

The only matters presented for determination are the correctness of the respondent's action (1) in refusing, in each of the cases and in each of the years, to allow deductions for depreciation on furniture and fixtures which were acquired prior to the taxable years in controversy, the cost of such items having been charged to expense on the books of the taxpayers in the years in which paid, deductions therefor having been taken in the returns of the taxpayers for such years and such deductions having been allowed by the respondent; (2) in not allowing the Firemen's Insurance Co. as a deduction for 1928 the amount of $5,949.97 representing an amount paid to a firm of accountants for services rendered in connection with the authoriza-

tion and issuance of an increase in the company's capital stock; and (3) in not allowing the Firemen's Insurance Co. as a deduction for 1929 an amount of $1,000 representing the amount paid to a trust company for services rendered in connection with the acquisition by the Firemen's Insurance Co. of more than 99 percent of the capital stock of another insurance company by the exchange of part of its own stock therefor. All other issues raised by the petitioners have been withdrawn. The proceedings were submitted upon stipulations of facts which are incorporated herein by reference and pertinent portions of which are set out herein.

### *Depreciation.*

With respect to this issue the stipulation is in part as follows:

(1) The Firemen's Insurance Company * * *, its affiliates * * * and the Mechanics Insurance Company * * * are insurance companies other than mutual or life insurance companies.

(2) The Firemen's Insurance Company was affiliated with the following corporations during the years 1925 to 1929, inclusive, and the deficiencies here in controversy were determined on said basis:

Concordia Fire Insurance Company,
Girard Fire and Marine Insurance Company,
National Ben Franklin Fire Insurance Company,
Superior Fire Insurance Company.

The Metropolitan Casualty Insurance Company became affiliated with the Firemen's Insurance Company on May 11, 1928. For the period May 11, 1928, to December 31, 1928, and for the calendar year 1929, said corporation was included in the consolidated returns filed for the calendar years 1928 and 1929 by the Firemen's Insurance Company and the deficiencies here in controversy were computed on said basis. The said Metropolitan Casualty Insurance Company filed a separate return for the period January 1. 1928, to May 10, 1928, which period is not covered by the instant appeals.

The Milwaukee Mechanics Insurance Company became affiliated with the Firemen's Insurance Company on February 7, 1929, and the Commercial Casualty Insurance Company became affiliated with the Firemen's Insurance Company on April 30, 1929. From the respective dates of their affiliation with the Firemen's Insurance Company, these two corporations were included in the consolidated income tax return of the Firemen's Insurance Company filed on the basis of the calendar year 1929 and the deficiency for said year was computed accordingly. The Milwaukee Mechanics Insurance Company filed a separate return for the period January 1, 1929 to February 6, 1929 and the Commercial Casualty Insurance Company filed a separate return for the period January 1, 1929, to April 29, 1929, which periods are not covered by the instant appeals.

The Mechanics Insurance Company was included in the consolidated return filed by the Firemen's Insurance Company for the years 1927, 1928 and 1929. The respondent held that said corporation was not affiliated with the Firemen's Insurance Company or any other company during the years 1927, 1928 and 1929, and determined the deficiencies for the years 1927 and 1928 on said basis. Said corporation sustained a loss for the year 1929.

(3) The following corporations made expenditures for additions and renewals of furniture and fixtures for the years 1916 to 1929, inclusive, * * *:

Fireman's Insurance Company
Concordia Fire Insurance Company
Girard Fire and Marine Insurance Company
National Ben Franklin Fire Insurance Company
Superior Fire Insurance Company

* * * * * * *

(4) Expenditures for additions and renewals of furniture and fixtures were made * * * by Metropolitan Casualty Insurance Company during the years 1919 to 1929, inclusive, and by Milwaukee Mechanics Insurance Company and Commercial Casualty Insurance Company during the years 1920 to 1929, inclusive,

* * * * * * *

(5) The Mechanics Insurance Company made * * * expenditures for additions and renewals of furniture and fixtures during the years 1916 to 1928, inclusive.

(6) The furniture and fixtures acquired by the corporations shown in paragraphs (3), (4) and (5) hereof, had a life of ten years.

(7) The expenditures for furniture and fixtures made prior to 1916 in respect to those corporations set forth in paragraphs (3) and (5), and prior to 1919 and 1920 in respect to those corporations set forth in paragraph (4), are not shown since the life of said furniture and fixtures would have expired prior to the years here involved.

(8) The amounts expended for furniture and fixtures by the corporations (3), (4) and (5) hereof, were charged to expense in their books and records and deductions claimed for same by said corporations as operating expenses in their Federal income tax returns in the years in which said expenditures were made. In respect to the corporations whose names appear in paragraphs (3) and (5) hereof, the respondent allowed said deductions claimed for all years up to and including the year 1924 in his determination of the Federal income and profits tax of said corporations for said years. In respect to the expenditures made and deductions claimed for furniture and fixtures by the Metropolitan Casualty Insurance Company and Milwaukee Mechanics Insurance Company for all years prior to the year 1926, and by the Commercial Casualty Insurance Company for all years prior to 1927, the respondent allowed the deductions in his determination of the Federal income and profits tax of said corporations for said years. In respect to the corporations referred to above and in paragraphs (3), (4) and (5) hereof, the total expenditures for furniture and fixtures claimed as deductions as operating expenses in their Federal income tax returns for all years subsequent to those set forth above in this paragraph, were disallowed by the respondent as deductions from income for tax purposes on the ground that said expenditures represented the purchase of capital assets, the cost of which should be returned to the corporations in the form of annual depreciation deductions allocated over the life of such assets. For those years in which the respondent has disallowed the deductions claimed for furniture and fixtures by the corporations whose names appear in paragraphs (3), (4) and (5) hereof, the respondent has allowed as a deduction from income depreciation on such furniture and fixtures at the rate of 10% of the total cost of all furniture and fixtures purchased subsequent to the years for which the respondent allowed the cost of furniture and fixtures as deductions for income tax purposes.

(9) The corporations referred to in paragraphs (3), (4) (5) and (8) hereof, filed their income and profits tax returns on or before the due date for filing said returns for all years for which a deduction for furniture and fixtures was claimed in their returns and allowed by the respondent in his determination of the Federal income and profits taxes for said years, and no waivers or consents to any extension of the statutory periods of limitations for the assessment and/or collection of income or profits taxes for any of said years were subsequently executed by the said corporations.

In the determination of the proposed deficiencies for the years here in controversy, the respondent allowed depreciation on the furniture and fixtures acquired during the years here involved, but did not allow any deductions for depreciation on furniture and fixtures purchased during those years in which the cost of such furniture and fixtures was claimed as deductions by each of the corporations shown in paragraphs (3), (4), (5) and (8) hereof, in their Federal income tax returns filed for each of said years, and allowed by the respondent as deductions in the final determination of their taxable net incomes for said years, on the ground that said corporations claimed and were allowed deductions in their Federal income tax returns for the total cost of all such furniture and fixtures and are not entitled to again recover the cost of such furniture and fixtures, or any part thereof, by now being allowed deductions for depreciation in their Federal income tax returns for the years involved, and also on the ground that at the time of the audit of the books and records of said corporations upon the basis of which the proposed deficiencies were determined, the statute of limitations barred the assessment and/or collection of the additional tax, which results from increasing the taxable income of each of said corporations by the amount of the expenditures for furniture and fixtures (less depreciation thereon) in the years during which said expenditures were made.

The contention of the petitioners with respect to deductions for depreciation as set out in one of the stipulations is as follows:

It is the contention of the petitioner that under the several revenue statutes, expenditures for furniture and fixtures should be capitalized, and these amounts should be recovered by an annual depreciation deduction over the ten year life of such furniture and fixtures, and the mere fact that expenditures for this purpose during the years prior to those here involved were charged to expense and deducted in full in the income tax returns of petitioners and subsidiaries cannot operate to defeat the right of these companies to a depreciation deduction on furniture and fixtures where such furniture and fixtures are still used and retained by the petitioners and subsidiaries.

The respondent's position is that the taxpayers, having claimed in their returns in prior years and having been allowed as deductions the full cost of the furniture and fixtures in controversy, are not entitled to the deduction of any further amount or amounts with respect to such property.

Pertinent provisions of the Revenue Act of 1926 which are applicable to the taxable year 1927 are as follows:

Sec. 246. (a) In lieu of the tax imposed by section 230, there shall be levied, collected, and paid for each taxable year upon the net income of every insurance company (other than a life or mutual insurance company) a tax as follows:

\* \* \* \* \* \* \*

(b) In the case of an insurance company subject to the tax imposed by this section—

(1) The term "gross income" means the combined gross amount earned during the taxable year, from investment income and from underwriting income as provided in this subdivision, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners;

(2) The term "net income" means the gross income as defined in paragraph (1) of this subdivision less the deductions allowed by section 247;

\*          \*          \*          \*          \*          \*          \*

SEC. 247. (a) In computing the net income of an insurance company subject to the tax imposed by section 246 there shall be allowed as deductions:

(8) A reasonable allowance for the exhaustion, wear and tear of property, as provided in paragraph (7) of subdivision (a) of section 234;

\*          \*          \*          \*          \*          \*          \*

(c) Nothing in this section or in section 246 shall be construed to permit the same item to be twice deducted.

SEC. 234. (a) In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\*          \*          \*          \*          \*          \*          \*

(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescense;

\*          \*          \*          \*          \*          \*          \*

The pertinent provisions of the revenue Act of 1928 applicable to the years 1928 and 1929 are contained in sections 204 and 23 of that act and are practically identical with the foregoing.

The revenue acts prior to that of 1921 did not contain any special provisions corresponding to those quoted above relative to the determination of the gross and net income of insurance companies of the class here involved. Article 548 of Regulations 45 (1920 edition), relating to the Revenue Act of 1918, provided with respect to insurance companies generally that gross income consisted of the total revenue from the operation of the business and of income from all other sources within the taxable year except as otherwise provided by statute. Article 568 of the same regulations provided that insurance companies are entitled to the same deductions from gross income as other corporations and also to the deduction of the net addition required by law to be made within the taxable year to reserve funds and of the sums other than dividends paid within the taxable year on policy and annuity contracts. Section 234 (a) (7) of the Revenue Act of 1918 provided that in computing the net income of other corporations there should be allowed as a deduction a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. Section 235 of the act provided that in computing the net income of a corporation no deduction should in any case be allowed in respect of any of the items specified in section 215, which in turn provided that

in computing net income no deduction should be allowed with respect to any amount paid for new buildings or for permanent improvements or betterments made to increase the value of any property or any amount expended in restoring property or in making good the exhaustion thereof for which an allowance is or has been made. In view of the foregoing provisions of the act and the regulations it seems clear that an insurance company of the class here involved was not authorized to deduct from its gross income in determining net income any amount expended for additions and renewals of furniture and fixtures, as was done by the taxpayers here involved, but was entitled to deduct only a reasonable allowance for the exhaustion, wear and tear of such property used in its business, including a reasonable allowance for obsolescence.

In April 1921 Internal Revenue Bulletin H, entitled "Income Tax Rulings Peculiar to Insurance Companies", was issued. The preface is as follows:

This bulletin is issued for the use of employees of the Bureau engaged in the computation of the income and excess profits taxes of insurance companies and for the information of interested taxpayers. It is not intended as a set of regulations or as an amendment of the present Regulations 45 (1920 edition) but solely as a statement of the practice which has been established under those regulations. While not a complete manual of practice, it answers most of the questions which present themselves in everyday practice.

Bulletin H on page 10 contains the following:

24. *General expenses and taxes.*—The general expenses and taxes of a stock fire insurance company will consist of the amounts accrued during the taxable year for such purposes, except that the accrued taxes shown in item 18, page 5, of the annual statement must be so segregated as to show the amount of Federal income and excess profits taxes included therein. The deductibility of any item included in the foregoing classification will be governed by the regulations applicable to corporations in general, *except that amounts expended for renewals and replacements of furniture and fixtures may be deducted as an expense.* Amounts expended for furniture and fixtures in the equipment of new offices will be treated as capital expenditures and are not deductible from gross income. [Italics supplied.]

From the foregoing it appears that it was the practice of the Bureau to allow as a deduction for expense amounts expended for renewals and replacements of furniture and fixtures and from what was done in the cases of the taxpayers here involved it appears that expenditures for additions were also treated as falling within the same class as renewals and replacements.

Beginning with the Revenue Act of 1921 each act has contained more specific provisions relating to insurance companies than were contained in acts prior to that of 1921. In the Act of 1921 there appeared provisions practically identical with those heretofore quoted from the 1926 Act as being pertinent to the matter in controversy. These provisions were reenacted in practically the same

form in all subsequent acts through that of 1928. While the provisions of these acts were more specific with respect to the method of determining the gross and net income of insurance companies of the class to which the taxpayers in these proceedings belong, the respondent's regulations with respect to the matter in controversy do not appear to have been altered, and until 1931 the practice of the Bureau with respect to the allowance as an expense of renewals and replacements of furniture and fixtures as set out in Bulletin H appears to have continued to be the same as it was under the acts prior to that of 1921. Judging from the respondent's treatment of additions to furniture and fixtures in these cases his practice with respect to additions appears to have been the same under the 1921 and later acts until 1931 as it was under the acts prior to that of 1921.

In the first part of 1931 G.C.M. 9333, C.B. X–1, p. 253, was promulgated. In this memorandum it was held that, in the case of insurance companies (other than life or mutual insurance companies) subject to the tax imposed by section 246 of the Revenue Act of 1926, the cost of furniture and fixtures, including the cost of furniture and fixtures previously charged off as an expense, should be capitalized as of the date of acquisition and depreciation allowed thereon on the basis of such cost and the period of the useful life of the asset from the date of acquisition, subject to the limitation that no depreciation is allowable upon any item, the cost of which has previously been deducted as an expense, when any additional taxes resulting from the subsequent capitalization of such cost are barred by the statute of limitations.

Notwithstanding what appears to have been the practice of the respondent with respect to the allowance as deductions for expense of amounts expended by insurance companies of the class here involved for renewals, replacements, and additions of furniture and fixtures down to 1931, the parties have not directed our attention to nor have we found anything in the various acts down through that of 1928, which covers the latest year here involved, that warrants the deduction as an expense of expenditures for renewals and additions of furniture and fixtures under the circumstances involved in these proceedings. We find nothing in the acts that warrants the deduction in determining taxable net income of amounts expended in the purchase of additional furniture and fixtures. So far as we can see they are properly to be considered as capital items. This being true, we know of no reason why amounts expended for renewals of furniture and fixtures which in the first instance, as the facts indicate, were charged to expense should likewise be charged to expense.

In view of the foregoing it is our opinion that the action of the taxpayers in deducting in their returns as expense the amounts expended for renewals and additions of furniture and fixtures and of the respondent in allowing such deductions was erroneous.

Does the fact that the taxpayers have already been erroneously allowed in their returns for prior years the full benefit of the entire amounts expended for renewals and additions prevent their obtaining further benefits by way of depreciation allowances for the years in controversy with respect to such of the property as had not been completely exhausted in such years, especially where limitations have run against any adjustment with respect to prior years and the taxpayers make no offer by way of waivers to surrender any portion of the benefits obtained as a result of their own and respondent's erroneous acts?

In *Larrowe Milling Co.*, 3 B.T.A. 245, the taxpayer had, from 1909 to 1916, inclusive, charged to expense all expenditures made in the acquisition of office furniture and equipment. Notwithstanding that the cost of such property had been charged to expense, we held that the taxpayer was entitled to a deduction in 1918 for depreciation thereon. Other cases to the same effect are *Clinton G. Edgar*, 10 B.T.A. 110, and 20 B.T.A. 14; *R. S. Newbold & Son Co.*, 7 B.T.A. 471; *Milwaukee Brass Mfg. Co.*, 10 B.T.A. 936. These decisions were placed on the ground that the expenditures were made for property which was in fact of a capital nature and therefore depreciable over its useful life; that the expenditures therefor having erroneously been charged to expense, the taxpayer should not be precluded from correcting the error and obtaining a depreciation deduction in the current year with respect to depreciable property which was actually being used in the business during such year. Coincident with and subsequent to the foregoing line of decisions there has developed another line of decisions to the effect that where a taxpayer in prior years has had through depreciation deductions in such years the benefit of the full cost or other basis of the property he is not entitled to further depreciation deductions with respect thereto, notwithstanding the property is continued in use and is giving satisfactory service. *Alpin J. Cameron*, 8 B.T.A. 120; *Alpin W. Cameron*, 20 B.T.A. 305; affd., 56 Fed. (2d) 1021; *Elliott-Granite Linen Corp.*, 26 B.T.A. 936; *Graves, Cox & Co.*, 27 B.T.A. 546. The bases upon which these decisions are placed are as stated by the court in the *Cameron* case, *supra:*

The evidence establishes that these eliminated items were not only in use in 1921, but were also giving satisfactory service in 1926. But " the amount of the allowance for depreciation is the sum which should be set aside for the

taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums set aside will (with the salvage value) suffice to provide an amount equal to the original cost." *United States* v. *Ludey*, 274 U.S. 295, 300, 47 S. Ct. 608, 610, 71 L. Ed. 1054. Obviously, the taxpayers are not entitled to a double deduction for the same capital assets, and, if the fact is, as the Board found, that the assets have been fully depreciated, the taxpayers can no longer rightfully claim an allowance for depreciation, even though such assets continue to give useful services,

and as stated in *Graves, Cox & Co., supra:*

Here we find that the petitioner has already recovered the cost of the assets by deductions allowed for years prior to 1929. Any further allowance would result in a double deduction for the same capital assets, which the statute does not authorize. *Cameron* v. *Commissioner*, 56 Fed. (2d) 1021, affirming 20 B.T.A. 305; *Lake Charles Naval Stores, supra.*

In addition to the reason given for the conclusion announced, we are of the opinion that at a time when the respondent is precluded by the statute from making an additional assessment for 1919 the petitioner ought not to be heard to say that the allowance made for depreciation in that year, based upon its own claim, was excessive so as to enable it to get the benefit of a double deduction in a later year. See *Alpin J. Cameron, supra.*

The taxpayers here rely on the first line of decisions as supporting their position, while the respondent relies on the latter. While the petitioners here did not obtain the full benefit of the cost of the property in controversy through depreciation deductions as did the taxpayers involved in the second line of decisions above, but deducted it directly as operating expenses, they obtained the benefit just as fully and as effectively as if they had taken the cost through depreciation deductions. For a determination of the question here involved, we think it makes no difference which method was employed. The taxpayers have had returned to them tax-free the full amount of their cost. Giving due consideration to both lines of decisions and having due regard for the rule that an overstatement of income for one year is not to be corrected by an offsetting deduction in a subsequent year, *Gould Paper Co.*, 26 B.T.A. 560, we think that where, as here, the period of limitations has run against any adjustment, a taxpayer may not receive a deduction for depreciation on any property the full cost of which was deducted from income as an operating expense in the return for the year in which paid or incurred and allowed as such. This we think is the sound rule to apply in such cases. Under it the taxpayer obtains a return of the entire cost of the property tax-free and at the same time he is not given a preferred status or advantage as a result of his own error over other taxpayers who correctly reported their income and who had not thus erred.

This conclusion is not only in harmony with decisions generally to the effect that unless specified by statute a taxpayer is not en-

titled to a deduction twice on account of the same expenditure, but is in harmony with the provision of section 247 (c) of the Revenue Act of 1926 and section 204 (e) of the Revenue Act of 1928 that nothing in the preceding provisions of such sections "shall be construed to permit the same item to be twice deducted."

The petitioners contend that the foregoing provision of section 247 (c) and 204 (e) of the Acts of 1926 and 1928, respectively, was not intended to apply in a situation such as is involved here, but was inserted by Congress for the purpose of preventing the deduction in determining net income of certain items which under the special provisions of the acts respecting insurance companies constituted deductions in determining gross income. The provision in question first appeared in the Revenue Act of 1921 and was reenacted in practically identical language in all subsequent acts through that of 1928. Although we find nothing in its legislative history to indicate the purpose of Congress in its enactment, we are unable to give it the limited application contended for by the petitioners. The provision for the allowance of depreciation precedes this provision against double deductions and in view of the broad language of the latter we do not think it is susceptible of the interpretation urged by the petitioners.

In view of the foregoing the respondent's action in not allowing deductions for depreciation on account of property which was acquired in prior years and the cost thereof deducted as an operating expense is sustained.

*Expenditures on Account of Authorization and Issuance of Increase in Capital Stock.*

With respect to this issue it is stipulated that:

During the calendar year 1928 the Firemen's Insurance Company caused its authorized capital stock to be increased from $7,500,000.00 to $13,500,000.00. During said year 1928 the Firemen's Insurance Company increased its outstanding capital stock by issuing capital stock of a par value of $6,000,000.00. In connection with the authorization and issuance of said capital stock in 1928 it employed the services of Joseph L. Froggatt and Company, a firm of accountants, at a cost of $5,949.97 and in the Federal income tax return for the year 1928 made claim for deduction of said amount. These services consisted of work performed in connection with an increase of issued stock of the Company, issuance of new certificates and posting of the stock transfer ledger and the proper recording of all transfers, and were performed solely in connection with an increase of shares of capital stock. The respondent in the determination of the deficiency appealed from, disallowed the deduction claimed.

The Firemen's Insurance Co. contends that it is entitled to a deduction in 1928 as an ordinary and necessary business expense of

the amount of $5,949.97 paid a firm of accountants for services rendered in connection with the authorization and issuance of an increase in its capital stock from $7,500,000 to $13,500,000. The respondent contends that the amount does not constitute an ordinary and necessary business expense and that his action in disallowing it as a deduction is correct.

Amounts paid accountants for services in connection with the organization and incorporation of a corporation are not deductible as ordinary and necessary business expenses. *Morganite Brush Co.*, 24 B.T.A. 776. Fees paid to lawyers by a corporation for obtaining an authorization of an increase in its capital stock are not deductible as ordinary and necessary expenses of carrying on a business or trade. *Emerson Electric Mfg. Co.*, 3 B.T.A. 932; *Holeproof Hosiery Co.*, 11 B.T.A. 547. Expenditures made by a corporation in connection with the issuance of its authorized capital stock are not deductible as ordinary and necessary expenses. *Borg & Beck Co.*, 24 B.T.A. 995; *Baltimore & Ohio R.R. Co.*, 29 B.T.A. 368. Considering the fact that the services of the accountants were rendered solely in connection with the increase of the capital stock of the taxpayer, we think that, in the light of the foregoing decision, the action of the respondent was correct.

*Expenditures on Exchange of Capital Stock.*

As to this issue the stipulation is in part as follows:

Under date of April 30, 1929 the Firemen's Insurance Company, in accordance with an agreement entered into by it with the stockholder of the Commercial Casualty Insurance Company, acquired more than 99% of the total issued and outstanding capital stock of the Commercial Casualty Insurance Company in exchange for part of its own capital stock. Both the petitioner and respondent treated the said exchange of stock as a nontaxable transaction resulting in neither gain nor loss for income tax purposes. In connection with the exchange and the acquisition of the stock of the Commercial Casualty Insurance Company, the Firemen's Insurance Company engaged the Fidelity Union Trust Company as depository to receive the stock of the Commercial Casualty Insurance Company from the owners thereof, to make examination and to determine the negotiability thereof, and to direct the issue of the stock of the Firemen's Insurance Company therefor. The Firemen's Insurance Company paid $1,000.00 to said Fidelity Union Trust Company for the services rendered by it and made claim in its Federal income tax return for 1929 for a deduction of said $1,000.00. The respondent disallowed the said claimed deduction of $1,000.00.

\*     \*     \*     \*     \*     \*     \*

Each of the petitioners filed their Federal income tax returns for each of the years involved in the appeals with the Collector of Internal Revenue at Newark, New Jersey.

The Firemen's Insurance Co. contends that it is entitled to a deduction as an ordinary and necessary business expense in 1929 of

$1,000 paid to the Fidelity Union Trust Co. for services rendered by it in connection with the acquisition by the Firemen's Insurance Co. of more than 99 percent of the outstanding capital stock of the Commercial Casualty Insurance Co. in exchange for a part of its own capital stock.

In *Odorono Co.*, 26 B.T.A. 1355 we said:

Ordinarily, the costs incident to the acquisition or sale of property are considered capital expenditures, which, in the case of a purchase, are added to the cost of the property (see *Marjorie Post Hutton*, 12 B.T.A. 265; affd., 39 Fed. (2d) 459; *I. N. Burman*, 23 B.T.A. 639), and in the case of a sale are deducted from the sale price, thereby, in taxable transactions, either reducing the amount of the gain or increasing the amount of the loss. See *W. A. Bahr*, 10 B.T.A. 637. Cf. also *Mrs. E. A. Giffin*, 19 B.T.A. 1243.

We find nothing in the facts here presented to justify any other conclusion than that the amount in controversy represented a part of the cost to the Firemen's Insurance Co. of the stock it acquired in the Commercial Casualty Insurance Co. The action of the respondent is accordingly sustained.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MURDOCK and McMAHON concur in the result only.