## WEBER-BUNKE-LANGE COAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9146. Promulgated April 11, 1928.

*Edward D. Bryde, Esq.*, and *Evert L. Bono, Esq.*, for the petitioner.
*Granville S. Borden, Esq.*, for the respondent.

## OPINION.

STERNHAGEN:. The first question is whether any appreciation in value of assets and good will can be included in the invested capital of the petitioner from January 1, 1920, because of the transaction which became effective on that date. The petitioner became the owner of all the shares of Central Bridge Coal Co. and Bunke & Meyer, Inc., by exchanging an equal par value of its own shares out of increase in capital stock. From that date the petitioner treated the assets of the other two companies as its own and operated their businesses as branches of its own business. The petitioner placed upon its books the assets of the other two companies rather than the shares of stock which it owned. If we consider the situation as one in which the petitioner, in effect, acquired the assets, we can not disregard the fact that the equity of stockholders in all of such assets was in the same hands that it was prior to January 1, 1920, and section 331 of the Revenue Acts of 1918 and 1921 applies and prevents any increase of invested capital based upon values on January 1, 1920, since the evidence shows that " an interest or control in such trade or business or property of 50 per centum or more remains in the same persons or any of them."

If we consider that the situation is only that three corporate entities continued, as before, and that the only legal change, so far

as the evidence discloses, is a change in stock ownership, it is equally clear that invested capital can not be increased. In either event, the action of the respondent in that respect was correct and we need not comment upon the evidence introduced to prove the values of tangibles and good will at January 1, 1920, except to say that opinion evidence of good will that totally disregards location of a retail coal yard as having any value is to be considered with some doubt.

2. We next consider the deduction from income of $16,699.15. This amount is alleged to be the value of buildings and coal pockets lost to the petitioner as the result of a lessor's insistence, upon a renewal of a lease, that the renewal lease should provide that such improvements became the property of the lessor at the expiration of the new lease. Although the renewal lease was assigned to the petitioner in October, 1920, there is no evidence, except as set forth in connection with the discussion of the preceding issue, tending to show that the buildings and coal pockets became the property of the petitioner. The only evidence is that the petitioner bought the stock of Central Bridge Coal Co., but entered the assets of that company on its books instead of the stock. We are not able to say that the improvements in question legally became the property of the petitioner, or, if so, in what manner. It may be that, if all the facts were before us, we could conclude that an informal liquidating dividend was received by the petitioner, such dividend consisting of all the assets of the Central Bridge Coal Co. We might further speculate that such a transaction gave rise to a gain or loss under certain circumstances. But such conclusions or speculations are useless in the absence of all the facts and, as the evidence before us does not show that the property ever became that of the petitioner, or, if so, in what manner, we must approve the respondent's action in disallowing the deduction.

3. The respondent says that his action in allowing a deduction in 1920 of one-half of $8,389, the cost of a building built on leased land was correct, but contends that the remaining one-half should be spread over three years, the lease having been extended for two years from May 1, 1922. The petitioner, however, says that it should have the remaining one-half in 1921. Neither position seems entirely correct to us. At the beginning of the year 1920, the lease had two years and four months to run and the cost of the building should be deducted upon that basis in the years 1920 and 1921. At the end of the year 1921 there should still remain four twenty-eighths of the total cost unextinguished, since the evidence before us does not show that at that time the petitioner had any information which would lead him to believe that a renewal of the lease was probable. The deductions for 1920 and 1921, on account of this item, therefore, should be computed upon the basis indicated above.

4. The parties have agreed that $1,771.50 of legal expenses and disbursements were in connection with the reorganization and we, accordingly, upon the authority of *Emerson Electric Manufacturing Co.*, 3 B. T. A. 932, affirm the respondent's determination as to that much of the payment, and the evidence showing that the remainder was a proper item of expense, allow that amount as a deduction.

*Judgment will be entered upon 15 days' notice, under Rule 50.*