## CLARENCE WHITMAN & SONS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 10316, 15888.  Promulgated May 7, 1928.

*Frank S. Bright, Esq.*, for the petitioner.
*M. N. Fisher, Esq.*, and *P. L. Peyton, Esq.*, for the respondent.

OPINION.

PHILLIPS: It is alleged that the respondent erred (1) in refusing to allow, as a deduction from income, amounts expended in the organization of petitioner, (2) in refusing to include in invested capital the value of intangibles acquired for stock and, in the alternative, (3) in determining that no abnormality existed in the capital or income of petitioner.

(1) The Commissioner refused to allow as a deduction any part of the payments made by petitioner for legal and accounting services in connection with its organization. We have heretofore had occasion to consider this question and have held that such expenditures are not ordinary and necessary expenses of operation, to be charged off as an expense of conducting the business of the year when paid and deducted in computing the taxable income of this year. *Logan-Gregg Hardware Co.*, 2 B. T. A. 647; *First National Bank of St. Louis*, 3 B. T. A. 807; *Emerson Electric Manufacturing Co.*, 3 B. T. A. 932; *Holeproof Hosiery Co.*, 11 B. T. A. 547. It appears, however, that a part of the amounts disallowed represents payments of taxes and it is immaterial that such payments were made in connection with a capital transaction. *United States* v. *Woodward*, 256 U. S. 632; *Keith* v. *Johnson*, 271 U. S. 1. Net income for 1918 should be reduced by the amount of such payments. See *Holeproof Hosiery Co., supra.*

(2) In support of its claim for a substantial valuation of the intangible assets which it acquired upon organization, the petitioner has submitted evidence which establishes that Clarence Whitman built up a very successful business in white and fancy cotton goods, which were marketed in his name and under trade-marks and trade-names which he owned. The stability of the business and the value of the trade-names and good will had been fully established over a period of several years at the time petitioner was organized and the evidence fully sustains a value in excess of $412,500, the amount claimed by petitioner, which is 25 per cent of the par value of the capital stock outstanding during the taxable year and the maximum value at which intangibles paid in for stock might be included in invested capital.

These intangibles, however, were received from Whitman in exchange for petitioner's stock and it becomes necessary to consider the effect of section 331 of the Revenue Act of 1918 which provides:

SEC. 331. In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received: *Provided,* That if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by such previous owner) with proper allowance for depreciation, impairment, betterment or development, but no addition to the original cost shall be made for any charge or expenditure deducted as expense or otherwise on or after March 1, 1913, in computing the net income of such previous owner for purposes of taxation.

Section 331 of the Revenue Act of 1921 contains the same provisions.

There seems to be no question that the intangibles for which stock was issued to Whitman cost him nothing and that he was the owner of an interest or control of 50 per centum or more in the petitioner. Counsel points to the clause "with proper allowance for depreciation, impairment, betterment, or *development*" and argues as follows:

The first two changes "depreciation" and "impairment" would reduce the value of the asset under the cost to the previous owner and the last two changes "betterment" and "development" would increase the value of the asset over the original cost. It is significant that the relation between the first two words is the same as that between the last two words. "Depreciation" conveys the thought of a gradual lessening in value while "impairment" generally indicates a sudden injury or taking away or diminution in value, quantity, etc., see Webster's Dictionary. On the other hand "betterment" means adding to or improving in quantity or value and includes sudden expenditures and cash out-

lays in connection with the asset while "development" is, in its ordinary use, analogous to "evolution''; it is a gradual unfolding of the processes; a gradual advance or growth through a series of progessive changes.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

\* \* \* Having proven that the value of the good will of Clarence Whitman transferred to the new corporation was worth $1,000,000, representing the allowance for development of the value of the good will through the years, it is respectfully submitted that the Board must allow as part of the invested capital of that corporation the statutory proportion of the $1,000,000 to which it is entitled.

The Revenue Act of 1917 was the first to impose an excess-profits tax. The underlying theory of such a tax was to provide a reasonable return upon the capital invested in the business before subjecting the excess income to such tax. One of the greatest difficulties in the practical application of such a tax was so to limit the invested capital that inflated values would not be taken into account and at the same time to prevent excessive taxation in other cases, where the application of the statutory provisions would work injustice and inequality. These considerations gave rise to such provisions as sections 326(a) (4) and (5), 327, 328, and 331 of the Revenue Act of 1918. *Shipowners & Merchants Tugboat Co.*, 4 B. T. A. 403.

Section 208 of the Revenue Act of 1917, which was the forerunner of section 331 of the 1918 Act, provided:

SEC. 208. That in case of the reorganization, consolidation, or change of ownership of a trade or business after March third, nineteen hundred and seventeen, if an interest or control in such trade or business of fifty per centum or more remains in control of the same persons, corporations, associations, partnerships, or any of them, then in ascertaining the invested capital of the trade or business no asset transferred or received from the prior trade or business shall be allowed a greater value than would have been allowed under this title in computing the invested capital of such prior trade or business if such asset had not been so transferred or received, unless such asset was paid for specifically as such, in cash or tangible property, and then not to exceed the actual cash, or actual cash value of the tangible property paid therefor at the time of such payment.

Section 331 of the Revenue Act of 1918, as it appeared in the bill (H. R. 12683) introduced into the House of Representatives by its Committee on Ways and Means, read:

In the case of the reorganization, consolidation, or change in ownership of a trade or business after March 3, 1917, if an interest or control in such trade or business of fifty per centum or more remains in the same persons, or any of them, then no asset transferred or received from the predecessor trade or business shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such prior trade or business if such asset had not been so transferred or received.

Accompanying the bill was a report from this Committee which stated with reference to this section:

In the case of the reorganization, consolidation, or change of ownership of a trade or business after March 3, 1917, if an interest or control in such trade or business of 50 per cent or more remains in the same persons or any of them, in such case no asset transferred or received from the predecessor trade or business shall, in computing invested capital, be allowed a greater value than would have been allowed in computing the invested capital of the prior trade or business if such asset had not been so transferred or received.

This provision was in the bill as it passed the House. It was referred by the Senate to its Committee on Finance. When the bill was reported by this Committee, the language of section 331 had been changed to read:

In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received: *Provided*, That if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by such previous owner) with proper allowance for depreciation, impairment, betterment or development, but no addition to the original cost shall be made for any charge or expenditure deducted as expense or otherwise since March 1, 1913, in computing the net income of such previous owner for the purposes of taxation.

The report (No. 617) submitted with the bill by the Committee had attached a copy of the report of the Committee on Ways and Means from which we have quoted above. The report of the Committee on Finance contains no specific reference to or explanation of the change made in section 331, but, speaking of the general purposes of the bill, that report said:

The committee refrains also from recommending any radical change in the method of computing invested capital, although a number of important improvements are suggested in this connection. Speaking generally, assets are valued, for the purpose of determining invested capital, at the price paid in acquiring them without recognition of subsequent appreciation.

The change in the language of section 331 was adopted by the Senate and, except for a change not material here, was accepted by the House and incorporated in the Act.

The intention of Congress seems to be clearly expressed that, in the circumstances stated, a successor corporation should stand in the stead of the predecessor owner for the purpose of determining invested capital. Had the draft proposed by the House been adopted there could have been no reasonable question that this was so in the case of a corporate reorganization. But that draft left in doubt the effect of the incorporation of the business of an individual. The individual was not subject to excess-profits tax and there were no provisions under which to determine the value of his assets for invested capital.

The amendment made by the Senate appears to have been to make clear that when an individual incorporated his business after March 3, 1917, his assets were to go into the invested capital of the corporation at a value which should not exceed the amount he then had invested therein. When the Act speaks of an allowance for betterment and development, it is our opinion that it refers to so much of the cost of betterment or development as has not theretofore been recovered by the individual by an allowance on account thereof; for example, so much of the amount spent in developing a mine as had not been recovered by way of an allowance for the exhaustion thereof. Throughout all of Title III of the Act and the reports of the Committees thereon, there is the manifest intent to prevent the increase of invested capital by unrealized appreciation, and to exclude any appreciation in the case of a reorganization of a business after March 3, 1917, where the ownership of 50 per centum remained the same. We are of the opinion that it excluded from the invested capital of petitioner any increase or appreciation in value of the good will, trade-marks and other intangibles which had taken place without cost to the preceding owner.

(3) We come then to consider petitioner's claim that it falls within section 327 of the Revenue Act of 1918 and is entitled to have its tax computed under section 328.

These intangible assets which the petitioner had acquired from Whitman gave it a volume of business and a reputation which had been built up over a period of many years. The petitioner was a newly organized corporation with no business and no good will of its own. When it acquired the trade-names, trade-marks and good will of Whitman, it acquired a business with annual sales of over $10,000,000 and annual net profits which had exceeded $300,000 in each of the several past years. This business was first established by Whitman under his own name in 1874. The testimony is that at the time petitioner took over this business Whitman had built up one of the finest white line goods in the country. The evidence concerning the volume of sales and the profits of the predecessor partnership and predecessor corporation establishes that the business and profits were no temporary matter, but firmly established, and this is confirmed in the subsequent operations of the petitioner. It was these intangible assets which were the principal cause of the large income which petitioner enjoyed during the taxable years and on which the deficiencies in question are based. Because of its manner of organization these assets may not be included in the computation of its invested capital. We have held that a taxpayer does not fall within the provisions of sections 327 and 328 merely because assets are used in the business which may not be included in invested capital. *Morris & Co.*, 1 B. T. A. 704. The exclusion must be such

as to create an abnormal condition. Where, as here, the asset excluded is the most substantial part of its capital and is the principal contributing factor in the production of taxable income of the petitioner, it is our opinion that such an abnormality exists. *Viscose Co.*, 3 B. T. A. 444; *G. M. Standifer Construction Corporation*, 4 B. T. A. 525; *Pittsburgh & Bessemer Coal Co.*, 5 B. T. A. 45; *Excelsior Motor Manufacturing & Supply Co.*, 5 B. T. A. 582; *J. M. & M. S. Browning Co.*, 6 B. T. A. 914; *Cushman Chuck Co.*, 8 B. T. A. 148.

Reviewed by the Board.

*Decision will be entered under Rule 62.*