UDOLPHO WOLFE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16010.   Promulgated February 19, 1929.

*Harry W. Forbes, Esq.,* for the petitioner.
*Harold Allen, Esq.,* and *W. R. Lansford, Esq.,* for the respondent.

OPINION.

LANSDON: The parties agree that the amount of $29,273.38 was disbursed by the petitioner in 1920, in the circumstances set forth in our findings of fact. There is, of course, no doubt that petitioner's income for 1920, available for surplus purposes or for the payment of dividends to its shareholders, was reduced by the amount of the payment in controversy.

The petitioner contends that the payment in question was an expense that it could not avoid, since it was incurred in an action in equity to which it was a party, and was paid in conformity with the decree of a court of equity clothed with broad discretion as to the matter of assessing costs and fees against parties litigant. The respondent disallowed the deduction in controversy as an expense of the petitioner incurred and paid in the taxable year 1920, argues that the petitioner was not a party to the suit in equity, and suggests that the court transcended its powers in assessing the costs against the petitioner and that the payment was a distribution of surplus for the benefit of all the stockholders.

There is no controversy over the facts. We must determine, therefore, as a matter of law, whether the payment is deductible from petitioner's income for tax purposes. It is clear that the petitioner was a party to the equity proceedings. A claim for the refund of corporate earnings alleged to have been improperly distributed can always be made a cause of action by stockholders who believe that their rights have been violated or sacrificed. If the objecting beneficiaries under the trust created by the will of Joel B. Wolfe had prevailed in the suit the decree of the court would have resulted in the payment of more than $500,000 to this petitioner and such payment would have become a part of its surplus to be held for business purposes or distributed to all the stockholders as might be determined by appropriate corporate action. Under the laws of the State of Rhode Island the court properly admitted petitioner as a party to the suit, as shown by the following provisions:

*Section 12, Chapter 339, General Laws of R. I., 1923.*

Whenever any bill or proceeding in equity is pending, any person not a party thereto may, upon making it appear to the superior court that he is interested in the subject matter of the suit or proceeding, * * * be allowed to become a party to such suit or proceeding, upon such terms and conditions as the court shall prescribe.

In *Burrill* v. *Garst*, 19 R. I. 38; 31 Atl. 436, the Supreme Court of the State of Rhode Island, in construing the above statute, said:

The general rule in equity as to parties is that all persons interested in the subject-matter of the suit or in the object to be attained by it ought to be made parties either as complainants or respondents.

It also held that such parties might be brought in upon their own application, the voluntary orders of the court, or—

where the defendants already before the court have such an interest in having them made parties as to authorize them to object to proceeding without such parties.

In these circumstances and in the light of cited statutes and decisions the argument that petitioner was not a party to the suit in equity is not persuasive.

The respondent suggests that the payment in question should be regarded as a distribution of corporation surplus for the benefit of stockholders. Upon the record we are of the opinion that this theory is untenable. Only a part of the stockholders objected to the proposed settlement of the trustees. Many of the nonobjectors were not represented in the suit and incurred no expenses for counsel fees or otherwise in connection therewith. The payment of the costs of the litigation from surplus in nowise benefited them since it discharged no obligations which they had incurred or assumed and reduced their interest in the assets of the petitioner. The legal basis for this theory is not apparent but if it is sound it would seem to follow that a great body of corporate disbursements might be excluded from allowable deductions from income as it must be presumed that every payment lawfully made by a corporation is for the benefit of all the stockholders. In proper circumstances a court may require a corporation to distribute a part or all of its surplus for the benefit of shareholders, but the selection of a special group to receive the benefits of such a distribution at the expense of all the remaining stockholders can not be supported by any principle of law with which we are familiar. It is our opinion that the payment in question can not be regarded as distribution from surplus in which benefits measured by stockholdings were enjoyed by all the shareholders of the petitioner.

The respondent also argues that in the assessment of the costs and fees here in question against the petitioner the court of equity transcended its discretionary powers and suggests that the petitioner should have appealed against that judgment. This suggestion raises questions in which we have no concern and that in our opinion are outside the field of our limited jurisdiction. It may be that the court was moved by motives of expediency, but it is well settled that in an equity suit the assessment of costs is discretionary with the court. The rule is stated in 15 Corpus Juris 32, 34 as follows:

In equity the costs are not necessarily adjudged, as at law, against the losing party. In the absence of statutes providing otherwise, the allowance of costs is wholly within the court's discretion, and such discretion cannot be reviewed or interfered with, unless it has been manifestly abused.

We are not concerned with the cause or reasons for the assessment against the petitioner, only with the amount in controversy, and are satisfied that the court of equity acted within its proper authority, based upon section 22, chapter 339, General Laws of Rhode Island, which provides:

In any bill or petition in equity wherein construction of a will or trust deed or any part thereof is asked, there may be allowed to each of the parties defendant brought in by such bill or petition, applying therefor, such reasonable sum for expenses and on account of counsel fees as the court in which such case is pending shall deem proper; such allowance shall be taxed as costs in the cause and be paid out of the estate or fund in the hands of the complainant concerning which estate or fund the construction is asked.

It is true that the payment here in controversy was not in the nature of an ordinary or recurring expense incident to the production of the petitioner's operating income in the taxable year, but the courts and this Board have often held that regular recurrence of expenditures is not an essential characteristic of deductible expenses and that unusual, extraordinary and nonrecurring payments, including attorneys' fees and court costs in connection with suits at law relating to the business of a corporation may be deductible from gross income for Federal tax purposes as operating expense unless it is clear that the obligation requiring such payments was incurred for the purpose of preserving or increasing capital assets, in which event they should be capitalized. The objecting beneficiaries in the suit in equity in this proceeding raised the single question that the income of the trust had been improperly distributed. If they had prevailed the petitioner would have received a large additional income in the taxable year, but its capital structure, except for profits-tax purposes, would not have been affected. Cf. *Kornhauser* v. *United States*, 276 U. S. 145; *J. W. Forgeus*, 6 B. T. A. 291; *American Feature Film Co.*, 11 B. T. A. 1271; *O'Day Investment Co.*, 13 B. T. A. 1230; *Peter Frees, Jr.*, 12 B. T. A. 737; *F. Meyer & Brother Co.*, 4 B. T. A. 481.

The petitioner is entitled to deduct the amount of $29,273.38 from its gross income for the year 1920 in the computation of its income-tax liability for such year under the provisions of section 234(a)(1) of the Revenue Act of 1918.

In connection with the petitioner's claim for the deduction of $14,508.81 from its gross income for 1923, we must decide (1) whether the petitioner's claim in abatement for the tax liability of such year was timely made, and (2) if so, whether the deduction claimed is allowable as an ordinary and necessary business expense for the period in question. The petitioner claims that it received notice of the jeopardy assessments of $18,157.17 and $3,218.85 on May 18, 1925, and that about the same time it received a first notice and

demand for the payment of the assessment for 1920 and that the assessment for 1923 was not included in such demand, and further claims that on or about September 2, 1925, it received notice and demand for the payment of the assessment for 1923 taxes assessed in May of that year. The respondent contends that notice and demand for the assessment of the tax for 1923 was mailed to the petitioner in May, 1925, and that petitioner failed to make a claim in abatement thereof accompanied by bond within 10 days of such notice and thereby lost its right to appeal to this Board for redetermination of the tax liability in question.

All the undisputed facts relating to the controversy over our jurisdiction are fully set forth in our findings of fact. The issue here is whether the Commissioner included the assessment of each of the years in question in the first notice and demand for payment which was issued in May, 1925, as he asserts, or whether he issued no notice and demand for the payment of the assessment of tax for 1923 until about September 2, 1925, as the petitioner claims. The respondent contends that if the first notice and demand for payment issued in May included both assessments, this proceeding is not properly before the Board as to 1923, since the petitioner admits that it filed no claim in abatement or bond on account thereof until some date in September.

The respondent relies entirely on the presumption that his determination is correct unless overcome by positive evidence adduced by the petitioner. This is, of course, the general rule, but in this controversy we are not able to identify the tax determination for which the benefit of the presumption is claimed. In May, 1925, the respondent made an additional jeopardy assessment against this petitioner on account of its tax liability for 1923 in the amount of $3,218.81, which, with the original assessment, increased petitioner's tax liability to $6,311.46. In his letter of March 26, 1926, which is the basis for this proceeding, he allows a part of the deduction claimed by the petitioner in the amount of $2,378.85, and disallows the remainder in the amount of $12,130.26. This indicates that sometime between May, 1925, and March 26, 1926, the Commissioner considered the petitioner's claim for the abatement or reconsidered his own determination of the assessment made in May, 1925, and reached the conclusion that the petitioner's true tax liability for 1923 is $4,608.90. It would appear, therefore, that the determination which we must presume to be correct is that set forth in the letter which is the basis for this proceeding and that such determination results from the denial in part of the petitioner's claim in abatement on account of the assessment of tax for 1923. In any event we are satisfied that the petitioner has adduced sufficient evidence to establish its contention that the first notice and demand for the payment

of the assessment for additional tax for the year 1923 was issued about September 2, 1925. It follows, therefore, that the claim in abatement and bond filed on September 10, 1925, were timely, and that the deficiency in controversy is properly before the Board for redetermination.

The petitioner's deduction of the amount of $14,508.81 from its gross income in 1923 as ordinary and necessary expenses incurred in the operation of its trade or business was disallowed in part and allowed by the Commissioner in part. The disallowance was based on the theory that liability for the amount disallowed was incurred in the promotion and incorporation of the Dutch company to which the petitioner transferred its business and assets on August 31, 1923. The evidence discloses that Shearman & Mitchell were the regular attorneys of the petitioner, and that for the performance of routine legal services they were ordinarily paid $250 per year, and that a settlement in full had been made with them after the termination of the suit in equity in 1920. Thereafter, they continued to render routine legal services through 1921, 1922, and to August 31, 1923, and the evidence establishes the fact that for such time such services were worth not more than $2,000. During the same period this firm advised with and assisted the petitioner in the matter of winding up its affairs preparatory to the incorporation of the Dutch corporation. From the evidence we conclude that only a comparatively small part of the amount paid to Shearman & Mitchell in 1923 was compensation for services rendered in connection with the trade or business of the petitioner.

Coudert Brothers were not employed by the petitioner until sometime in 1922. This firm rendered no service except in connection with the plans for winding up the business in this country and in the investigation of the corporation laws of European countries.

A careful consideration of the record convinces us that the greater part of the attorneys' fees paid in 1923 had no relation to the trade or business of the petitioner in 1921, 1922, and 1923, but were compensation for services rendered in connection with the proposed reincorporation. In these circumstances we are of the opinion that the bulk of these payments should be regarded as organization expenses incurred and paid in connection with the promotion and incorporation of the new company to which the petitioner transferred its assets and business and must, therefore, be regarded as capital expenditures. On this issue the evidence fails to overcome the presumption that the deficiency asserted by the respondent for the year 1923 is correct. *First National Bank of St. Louis*, 3 B. T. A. 807; *Emerson Electric Manufacturing Co.*, 3 B. T. A. 932; *Weber-Bunke-Lange Coal Co.*, 11 B. T. A. 503; *Clarence Whitman & Sons, Inc.*, 11 B. T. A. 1192.

*Decision will be entered under Rule 50.*