CONCRETE ENGINEERING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19257.   Promulgated March 5, 1930.

*George E. H. Goodner, Esq.*, for the petitioner.
*John D. Foley, Esq.*, and *Lloyd W. Creason, Esq.*, for the respondent.

OPINION.

MORRIS: A very brief review of the facts set forth hereinabove convinces us that the two patents in question were extremely valuable when acquired by the petitioner. The invention was a proven success from the very beginning of the use thereof by the partnership which the petitioner succeeded. During the two years of the partnership's existence 1,500,000 square feet of concrete flooring were constructed by the Meyer method at a net profit of approximately $30,000. The petitioner's business increased from 1,710,344 square feet of concrete floor construction in 1915 to 10,928,954 square feet in 1927 and its net profits increased for the same period of time from $39,750.99 to $229,949.60. During the period 1915 to 1928 the petitioner declared and paid stock dividends to the extent of $495,300, and cash dividends of $389,450, and its surplus and undivided profits grew from $5,432.19 in 1914 to $364,322.54 in 1927.

Considering the almost phenomenal growth of the petitioner from its inception as corroborative of the direct testimony of record and after a careful consideration of all of the evidence and testimony, we are of the opinion, and have found as a fact, that the actual cash value and fair market value of the patent acquired by the petitioner in 1914 was $300,000, and that the actual cash value and fair market value of the patent acquired in 1918 was $150,000.

Therefore, the petitioner is entitled to a deduction for exhaustion in 1920 equal to one-seventeenth of the respective values set forth in the findings of fact.

With respect to the second allegation of error urged by the petitioner, that is, failure of the respondent to include in invested capital as paid-in surplus the unexhausted portion of the value of said patents, we held in *Herald-Despatch Co.*, 4 B. T. A. 1096, that intangible property paid in to a corporation without consideration therefor could not be included in invested capital under the provisions of section 326 (a) (3) of the Revenue Act of 1918 as paid-in surplus, and, therefore, the petitioner's contention in this particular must be denied.

Since we have held that the value of the patents in question may not be included in invested capital as paid-in surplus under the provisions of section 326 (a) (3) of the Revenue Act of 1918, we are, under the alternative allegation of error urged by the petitioner, called upon to decide the question of whether the petitioner is entitled to have its excess-profits taxes computed under the provisions of section 328 of that Act.

We have repeatedly held that the mere fact of statutory exclusion of items from invested capital does not necessarily create abnormal conditions which may be relied upon by the taxpayer to bring it within the provisions of section 328, *supra*. *Morris & Co.*, 1. B. T. A. 704. But, on the other hand, the fact that such exclusion may under proper conditions create such abnormality has also been recognized. In *Enameled Metals Co.*, 14 B. T. A. 1392, the Board said:

* * * Where the item excluded has been the principal income-producing factor and primarily responsible for the production of the income of the taxpayer, we have not hesitated to say that an abnormal situation existed. *Clarence Whitman & Sons, Inc.*, 11 B. T. A. 1192. But it does not follow that every time an asset is excluded from invested capital there results an abnormality within the meaning of section 327 of the Act. *Morris & Co.*, 1 B. T. A. 704. In many businesses there will be some good will, or some appreciation in the value of the assets, or some other factor which can not enter into the computation of invested capital. The exclusion must be such as to cause exceptional hardship.

In *Clarence Whitman & Sons, Inc.*, 11 B. T. A. 1192, the Board had under consideration the question of whether the exclusion of certain assets from invested capital gave rise to abnormalities within the meaning of the Act, and it said:

* * * The exclusion must be such as to create an abnormal condition. Where, as here, the asset excluded is the most substantial part of its capital and is the principal contributing factor in the production of taxable income of the petitioner, it is our opinion that such an abnormality exists.

We have found as a fact that the two patents, the value of which has been excluded from invested capital, had an aggregate value of $450,000 when acquired by the petitioner, and, furthermore, that those patents were the chief, if not almost the sole, income-producing factors of the business. Therefore, the conclusion that there was

an abnormality in the petitioner's invested capital for 1920 within the meaning of section 327 of the Revenue Act of 1918 is inescapable.

As its fourth allegation of error herein the petitioner pleads the statute of limitations as a bar to the assessment and collection of the deficiency in controversy.

The petitioner alleges and contends that the consent purporting to extend the period of limitations for the year 1920 is invalid because (1) it was not signed personally by the respondent, and (2) it was incumbent upon the respondent's counsel to prove that the party who signed for the respondent acted within the scope of his authority in so doing, and (3) that the petitioner's secretary-treasurer was without statutory authority to bind the corporation.

In *Trustees for Ohio & Big Sandy Coal Co. et al.*, 9 B. T. A. 617, where the validity of consents entered into between the taxpayer and the respondent was placed in issue, the Board said:

The Commissioner is presumed to discharge his official duties in a proper and legal manner and such presumption is not overcome by the mere showing that the signature of the Commissioner upon the consent is not in his personal handwriting.

The Board also said:

It is a general principle to presume that public officials act correctly, in accordance with the law and their instructions, until the contrary appears. [Citations].

The plea of the statute of limitations was invoked by the petitioner. The respondent, in order to show that the period of limitations had not expired, produced a waiver signed by the secretary-treasurer of the petitioner and signed " D. H. Blair, Commissioner, L. G." Since the consent appears to be regular upon its face and in accordance with the law, we will presume that the party who signed the name of the respondent to the consent acted within the scope of his authority, in the absence of a showing to the contrary.

With respect to the contention of the petitioner that its secretary-treasurer was without authority to bind the corporation, the petitioner's counsel states in his brief that the law of Nebraska is that such officer can not do so unless specially authorized. He cites no such law, nor have we been able to find any which would prohibit the act complained of. The by-laws of the corporation are not before us, nor has any evidence been adduced by the petitioner to show what the powers of the secretary-treasurer who signed the consent were. If the petitioner's secretary-treasurer was powerless under the law of the State or by the by-laws of the corporation to enter into the consent in question and affix the corporate seal of the company to official documents, which he did in this instance, that fact should have been affirmatively shown by the petitioner, which

it did not do. We are, therefore, of the opinion that the assessment and collection of the tax for 1920 is not barred by the statute of limitations.

Reviewed by the Board.

*Judgment will be entered under Rule 62 (c).*