## STERN v. HARRISON, Collector of Internal Revenue.

### No. 8663.

Circuit Court of Appeals, Seventh Circuit.

Dec. 18, 1945.

322

J. Albert Woll, U. S. Atty., of Chicago, Ill., Samuel O. Clark, Jr., Asst. Atty. Gen. and Sewall Key, Helen R. Carloss, and I. Henry Kutz, all of Washington, D. C., for appellant.

A. J. Pflaum, Harry N. Wyatt, Richard H. Levin, and Hedwig F. Brann, all of Chicago, Ill. (D'Ancona, Pflaum, Wyatt, Marwick & Riskind, of Chicago, Ill., of counsel), for appellee.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

The Collector of Internal Revenue appeals from a judgment in favor of plaintiff, a taxpayer, for a refund of income taxes held by the District Court to have been illegally assessed and collected for the year 1936. The appeal involves the question whether the gain derived by the taxpayer on the transfer of his shares of preferred stock, pursuant to a plan for the complete redemption and retirement of one-half of the preferred stock of the corporation, was taxable 100% as a distribution in partial liquidation within the meaning of § 115(c) and (i) of the Revenue Act of 1936, or as a capital gain upon the sale of a capital asset under the provisions of § 117(a) of that Act, 26 U.S.C.A. Int.Rev. Acts, pages 868, 871, 873.

The facts giving rise to the controversy are simple and undisputed, and were presented to the District Court by stipulation. In 1936, the taxpayer was the owner of 1,122 shares of the preferred stock of the Balaban and Katz Corporation, purchased at various times from 1919 to 1934, for a total price of $39,059. This corporation, organized under the laws of Delaware to engage in the business of exhibiting motion pictures in the middle west, had outstanding capital stock as of December 29, 1934, as follows:

| | |
|---|---|
| 264,206 shares of common stock of a stated value | $6,605,150 |
| 26,126 shares of 7% cumulative preferred of a par value of $100 a share, subject to redemption at $110 plus accumulated dividends, par value | 2,612,600 |

In addition, the corporation also had two issues of notes outstanding, one of $2,924,500, bearing 5½% interest, and the second, of $128,000, bearing 6% interest. In May 1935, all these notes were retired with the proceeds of a bank loan of $2,400,000 bearing 3¼% interest, together with some corporate funds.

In February, 1936, the Board of Directors adopted a plan to redeem and retire one-half of the holdings of preferred stock of each preferred stockholder of record April 3, 1936, by payment on May 1, 1936, of $110 a share and accumulated dividends to that date. Pursuant to this plan, the corporation acquired 13,055 shares of its preferred stock which it thereupon retired and cancelled as of May 1, 1936, filing a certificate to the effect that 13,055 shares of its issued and outstanding preferred stock theretofore purchased by it out of surplus had been retired and that the capital had thereby been reduced by the amount of capital represented by the shares so purchased and retired, namely, $1,305,500. The cer-

tificate also stated that the Certificate of Incorporation prohibited the reissue of the shares of preferred stock so purchased. These facts are all as stated by the District Court in its opinion.

As a result of these transactions, appellant received from the corporation $61,170 for 561 shares of the preferred stock delivered by him to the corporation, for a profit of $22,650. He treated this profit in his income tax return for the taxable year as a capital gain realized upon the sale of exchange of capital assets, computing the gain in the amount of $8,964, pursuant to § 117(a) of the Revenue Act of 1936 which provides for a sliding scale of percentages for recognizing gain, ranging from 100% to 30%, depending upon the length of time the capital asset has been held by the taxpayer, from one year to more than ten. The Commissioner held that the profit was taxable for the full amount of the profit under the provisions of § 115(c) and (i) of the Act:

(c). "Distributions in liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117(a), 100 per centum of the gain so recognized shall be taken into account in computing net income, except in the case of amounts distributed in complete liquidation of a corporation. * * * In the case of amounts distributed (whether before January 1, 1934, or on or after such date) in partial liquidation * * * the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits."

(i). "Definition of partial liquidation. As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

The District Court rendered findings of fact including three which appellee here insists are binding upon this court to the effect that the funds used for the purchase of the preferred stock were obtained by a bank loan pursuant to the corporation's plan to replace all its outstanding obligations and preferred stock aggregating approximately $6,000,000, and bearing interest and dividends of from 5½% to 7%, with bank loans bearing interest of 3.125%; that the sale of appellee's stock was a step in this transaction which in no way changed its corporate structure or decreased its total assets or total capitalization, no steps being taken toward liquidating the business in any way, the only result being to increase the new income available for payment of dividends on common stock; and that the position of the corporation as one of the leading motion picture exhibitors in the Chicago area was not changed as a result of the recapitalization plan, nor were its assets, aggregate debt and stock capitalization or operations reduced in any way by the adoption of the plan; that the acquisition of preferred stock did not involve anything like a partial liquidation, and that "apart from any question of the income tax consequence of the effect upon a statutory provision of the motive or intent of taxpayer or any other person, the transaction here involved viewed in its entirety does not come within the meaning of the term 'amounts distributed in partial liquidation of a corporation' as defined in § 115(i) of the Revenue Act of 1936," the ultimate goal sought being not a liquidation of the corporation but rather an expansion of it.

The court concluded as a matter of law that the provisions of § 115(c) providing for the 100% taxation of gains upon distributions in partial liquidation of corporations do not apply to transactions which are not in effect liquidating, and as a result of which there is no diminution in the assets, capitalization or operations of the corporation's business, and that the redemption of its preferred stock by Balaban and Katz did not amount to a "distribution in partial liquidation" such as to come within the meaning of that term as it is defined in the Revenue Act of 1936, but was instead a sale of capital assets taxable under § 117(a).

Appellee contends that this court is bound by the findings of the court below, citing our decision in Fox v. Harrison, 7 Cir., 145 F.2d 521, where it was contended that the particular findings relied upon were in fact conclusions of law rather than findings of fact, hence not re-

quiring acceptance by the reviewing court. We said there that the function of this court as a reviewer of facts was limited to an ascertainment if there were any rational basis for the findings made by the trial court or whether such findings were substantially supported. We determined that the particular findings there involved were substantially supported whether the question were treated as one of law or fact. However, in the case at bar, we are of the opinion that the findings upon which appellee relies, whether they be considered as of fact or law, are contrary to certain stipulated facts recited by the court in its opinion. We do not understand how it can be said that a corporation may retire and cancel capital stock in the amount of $1,305,500 theretofore purchased out of surplus, thereby reducing its capital stock by that amount, filing its certificate to that effect in the proper office, without changing its corporate structure and decreasing its total capitalization. We think that to this extent the findings of fact of the District Court are not supported by the stipulated facts, hence we are not required to accept them.

■ We find no qualification or limitation upon the statutory definition of "amounts distributed in partial liquidation" contained in § 115(i) as meaning a distribution in complete cancellation or redemption of a part of its stock. The transaction here involved was just such a cancellation and redemption of half of all the preferred stock of the corporation and clearly falls within the definition, thereby automatically subjecting it to the treatment for tax purposes provided by § 115(c). Since the statutory definition is without limitation or exception, the business purpose for which the transaction was carried out appears to us to be irrelevant. As the Tax Court said in R. D. Merrill Co., 4 T. C. 955: "It is not necessary that there be an intent to liquidate the corporation completely and cease business in order for there to be a partial liquidation of a corporation * * *. (Quoting from its earlier decision in Hamilton Allport, 4 T.C. 401) '* * * The statute applies, not to a distribution in liquidation of the corporation or its business, but to a distribution in cancellation or redemption of a part of its stock'." Hence we think the District Court was in error in its conclusion that the transaction here involved amounted to a sale of capital assets taxable under § 117(a) rather than a distribution in partial liquidation subject to the incidence of the tax provided by § 115(c).

■ Appellee cites and discusses a number of cases arising under prior law having to do with the question whether certain distributions therein involved were ordinary or liquidating dividends. In view of the unambiguous language of § 115(i) and (c), we do not consider these cases helpful. He also relies on Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; and Pinellas Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428, for the proposition that formal definition in the statute is limited by the Congressional intent and the normal understanding of the substantive meaning of the term defined. The Gregory case involved an attempt on the part of the sole stockholder of a corporation to diminish the amount of income tax due for gain resulting from the sale of certain securities owned by the corporation. It is unnecessary to recite the facts of that case save to say that the court found that the scheme adopted to accomplish the purpose was a sham and subterfuge, having no business or corporate purpose apart from that of tax evasion. The Pinellas case similarly involved an elaborate scheme of corporate reorganization designed solely for the purpose of reducing the taxes on the gain from the sale of corporate assets. In the case at bar, the particular series of transactions involved were adopted for a particular business purpose entirely separate from the matter of taxation, and apparently without thought of the consequences for the stockholders. The fact that those transactions brought the stockholders within the orbit of the Act does not render the Act inoperative as to them. Cf. Cedarburg Canning Co. v. Commission, 7 Cir., 149 F. 2d 526.

■ It may be true that the purpose of Congress in singling out for special tax treatment those gains resulting from corporate distributions in partial liquidation was to reach distributions from surplus or excess funds which appeared to be in fact nothing more than ordinary dividends. Appellee seeks to distinguish cases relied upon by appellant on this basis—calling attention to the fact that the distribution here was from money borrowed for the purpose, and did not utilize idle funds of the corporation. We reiterate that the statute, § 115(c) and (i), makes no such distinction, providing for taxing of all distribu-

tions in partial liquidation at the full rate, and making no exception in the case of distributions from borrowed money rather than from surplus funds in the corporate treasury.

Judgment reversed.