## THORNTON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9167.

Circuit Court of Appeals, Seventh Circuit.

Jan. 31, 1947.

John E. Hughes, of Chicago, Ill., for petitioner.

Sewall Key, A. F. Prescott, Newton K. Fox, and Hilbert P. Zarky, Assts. to Atty. Gen., and J. P. Wenchel and John M. Morawski, both of Washington, D. C., for respondent.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

This appeal involves the Federal income tax liability of petitioner for four years, 1935 to 1938, inclusive.

The Tax Court held certain corporate distributions received by petitioner to be distributions in "partial liquidation" and therefore entirely subject to income taxation, whereas taxpayer contends they should be treated as long time capital gains which enjoy a more favorable tax status. In other words, the income tax rate is less if said income be taxed as capital gains.

Were they partial liquidations? That is the precise question we must decide to dispose of this appeal. We turn to the facts which are stipulated, and which control.

The four tax years involved are 1935 to 1938, inclusive.[1]

Taxpayer acquired 3,773 shares of common stock in the Bankers Farm Mortgage Company during the years 1931 to 1937 at a total cost of $105,267.88.[2]

Taxpayer received $171,647.50 on this stock during the years 1935 to 1938, and these distributions give rise to the asserted deficiency tax liability. The taxpayer concedes that prior to 1935 the distributions received on his stock were in excess of the cost basis to him of said stock.

The corporation which made these distributions is the Bankers Farm Mortgage Company, organized in Wisconsin in 1931. It acquired the assets of the insolvent Bankers Joint Stock Land Bank in 1932.

The Tax Court found that the Bankers Farm Mortgage Company was formed to liquidate the assets of the Land Bank. Its activities resulted in a reduction of the Land Bank's transferred assets from thirteen million dollars in 1932 to four and a half million dollars in 1938.

The stipulation further states that at the time of the distributions here involved the Bankers Farm Mortgage Company had no

---

[1] The petitioner received distributions from the Bankers Farm Mortgage Company during the years 1935 to 1938, inclusive, upon his 3,773 shares of stock as follows:

| Distributions | 2,880 shares | 700 shares | 10 shares | 183 shares | Total 3,773 shares |
|---|---|---|---|---|---|
| 1935 | | | | | |
| $25 per share | $72,000 | $17,500 | | | $89,500.00 |
| 1936 | | | | | |
| $15 per share | 43,200 | 10,500 | $150. | | 53,850.00 |
| 1937 | | | | | |
| $5 per share | 14,400 | 3,500 | 50. | $915.00 | 18,865.00 |
| 1938 | | | | | |
| $2.50 per share | 7,200 | 1,750 | 25 | 457.50 | 9,432.50 |

[2] The number of shares of common stock of the Bankers Farm Mortgage Company owned by the petitioner, dates of acquisition, and cost basis to him are as follows:

| Date | Shares | Cost Basis |
|---|---|---|
| 4-1-31 | 2,880 | $84,267.88 |
| 4-1-34 | 700 | 21,000.00 |
| 1-1-36 | 10 | none |
| 4-1-37 | 183 | none |
| | 3,773 | $105,267.88 |

accumulated earnings and profits; had no earnings and profits for the taxable years in which the distributions were made; the distributions were not out of earnings and profits; and were not out of increase in value of property accrued prior to March 1, 1913.

Taxpayer never surrendered any of his stock in the Bankers Farm Mortgage Company and no indorsement of the distributions was made on his stock certificates.

Each distribution save one, was preceded by a corporate resolution declaring the payment of a "liquidating dividend." [3]

The Tax Court also found that "During the taxable years the company intended to liquidate its assets and did not intend to, nor did it, engage in any business not incident to this liquidation." However, at the time of the hearing before the Tax Court "The company was engaged in the business of owning real estate and making loans on the security of real estate, mostly farm lands, and the company intends to continue in this business." Taxpayer, as president of the company, filed its 1938 tax return stating the business of the company, among other things, was "liquidating assets of the Bankers Joint Stock Land Bank."

The important statute here involved is Section 115(i), 26 U.S.C.A. Int.Rev.Code, § 115(i), which provides:

"(i) Definition of partial liquidation. As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

This section has been provocative of considerable dispute and litigation. It was changed back to the capital gains system in 1942. Other subsections related to the subject of this subsection (i) are Section 115(c) (d).

As urged by respondent, the question might be said to be a close one. He argues

that the evidence showing an early intention to liquidate the assets of the defunct land bank raises a factual issue which was decided in respondent's favor and thus disposes of the controversy. In other words, there being evidence to support the Tax Court's finding, the controversy is closed under the ruling of the Supreme Court in Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248.

Petitioner insists, on the other hand, that while the Tax Court made findings they were but statements of facts which were stipulated. It did not make a finding on the vital and controlling issue as to a "complete cancellation or redemption of all or a portion of petitioner's stock." He goes further and insists the facts which are clear and uncontradicted show there was no partial liquidation of the stock as that term is used in the statute, and therefore the conclusion of the Tax Court is assailable and in no way governed by Dobson v. Commissioner, supra. He cites Bingham v. Commissioner, 325 U.S. 365, 370, 65 S.Ct. 1232, 89 L.Ed. 1670, and Burton-Sutton Oil Co. v. Commissioner, 66 S.Ct. 861.

We agree with petitioner that Dobson v. Commissioner does not cover this case provided there is no evidence which sustains the Tax Court's conclusion that the moneys by petitioner received were in partial liquidation of the stock he held in the Mortgage Company.

This brings us to the inquiry—Were the payments made to petitioner in partial liquidation of stock he held in the Mortgage Company?

■ We think much confusion arises out of the meaning of the term "partial liquidation." This term has a technical or special meaning and also a general one. Congress has given it a specific definition which applies to tax cases. If our general understanding of the meaning of the word liquidation be different, it must give way to the statutory definition for tax purposes. Likewise, in giving it this special definition,

---

[3] "Resolved, that a liquidating dividend of Ten Dollars ($10.00) per share be paid on or before July 21, 1934, on the Company's outstanding capital stock; and that such dividend be paid directly to the holders of the Company's Voting Trust Certificates of record on the books of the agent of the Voting Trustees as at the close of business on the 19th day of July 1934."

Congress did not confer with or agree with the taxpayer on this definition. It should therefore be bound by the language it used.

Section 115 was taken from the Acts of 1934 and 1936. Section 115(c) (Acts of 1936 and 1938) provides

"Distributions in liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part of full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117, the gain so recognized shall be considered as a short-term capital gain except in case of amounts distributed in complete liquidation."

Section 115(i) defines "partial liquidation" as above quoted.

The history of this taxation measure is somewhat illuminating. It shows that beginning in 1921 and continuing up to 1934, all liquidations were taxed as capital gains. In 1934 the Act was amended at the instance of the treasury to prevent shareholders distributing corporate earnings and profits in liquidation so as to pay capital gains tax and thereby avoiding the surtax which would be payable were such surplus distributed as dividends. See also, Senate Report No. 558, C. B. 1939-1 p. 586, 614. Also see House Report No. 704, C. B. 1939-1, Part 2, p. 554, 576.

It is fair to assume from these reports that Congress when it enacted this legislation intended to apply it to cases where payments were made by the corporations *out of earnings.* It did not intend it to apply to distributions of capital. In the latter case it was expected the "capital gains" rules should apply.

We are not required, in this case, to invoke a construction based on Congressional intent. The definition of a partial liquidation leaves us free of doubt. The language is clear and unequivocal.

■ Surely, no distribution to petitioner was "in complete cancellation or redemp-

tion of a part of its stock." That is too plain for argument. Respondent must and does rely on the alternative clause—"or one of a series of distributions in complete cancellation or redemption of all **or** a portion of its stock * * *."

Respondent presses his contention hard that this alternative definition covers the instant case. It seems to us he has failed and must fail because of the inclusion of the words "in complete cancellation or redemption."

Here there was no complete cancellation or redemption of all or a portion of the stock. Without it there was no liquidation, partial or complete. This ends the matter. It may be that the Mortgage Company at one time intended to wind up its affairs, and later changed its mind. It distributed some of the money received on sale of its assets among its stockholders including petitioner. In a broad or general sense or use of the word, it could have been described as liquidated. But it was not such a partial liquidation as Congress defined that term.

The decision of the Tax Court is reversed with directions to proceed in accordance with the holdings here set forth.