**SHEEHAN et al. v. DANA.**

No. 13458.

Circuit Court of Appeals, Eighth Circuit.

Aug. 5, 1947.

Rehearing Denied Sept. 2, 1947.

Maurice P. Wolk, Sp. Asst. to Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., Lee A. Jackson and Wm. B. Waldo, Sp. Assts. to Atty. Gen., Mr. Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and Rosemary M. Ramsey, Asst. U. S. Atty., of St. Louis, Mo., on the brief), for appellants.

William H. Biggs, of St. Louis, Mo. (Davis Biggs and Biggs, Curtis & Crossen, all of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

In 1914 the Charter Oak Stove and Range Company, a Missouri corporation, had outstanding 4,000 shares of $100 par value common stock. The business of the company was expanding, and it was in need of additional capital. To provide the needed capital, stock dividends of $100,000 were declared out of surplus in each of the years 1914, 1920, and 1923.

Substantial cash dividends were paid by the company from 1914 to 1934, but the years 1921 and 1931–1934, inclusive, were loss years, and as of September 1, 1934, the books of the company showed a deficit of $23,558.53. The business of the company had steadily declined for several years, and its capital requirements were greatly reduced. The company reduced the par value of its stock from $100 to $70 a share and transferred $210,000 resulting

from this reduction from capital to surplus account. In a letter to the stockholders enclosing a notice of a meeting called to reduce the par value of the company's stock, the appellee, who was the president and a large stockholder of the company, advised the stockholders that the purpose of the contemplated action was "To eliminate the deficit in our capital structure * * * to provide for any other deficit which may arise. * * * To restore to surplus the capitalized earnings of prior years out of which distributions may be made to stockholders as and when the funds are not required in the business." These transactions were for a legitimate corporate purpose and not for tax evasion.

In 1935 and 1936 the company made distributions to its stockholders partly from current earnings and partly from the surplus created by the reduction in the par value of its capital stock. The appellee received a distribution in 1935, of which $22,318.85 was attributable to surplus; and in 1936, a distribution of which $16,633.88 was attributable to surplus. He included all of the 1935 and 1936 distributions in his income tax returns for those years as ordinary dividends.

In due time, the appellee filed claims for refunds on the ground that the portions of the distributions attributable to surplus derived from the reduction in par value of the company's stock were not ordinary dividends taxable as such, but instead constituted distributions from capital in partial liquidation of the corporation. The collector denied the claims. His ruling was reversed in the District Court and this appeal followed.

The District Court [66 F.Supp. 47, 48] held that the distributions were paid out of capital "released through the reduction in par value of the stocks," were not essentially equivalent to the distribution of taxable dividends, and were made in partial liquidation of the corporation. We agree with appellants that these findings are either without support in the evidence or are based on an erroneous interpretation of law.

Decision of the question presented is controlled by sections 22 and 115 of the Revenue Acts of 1934, 26 U.S.C.A. Int.

Rev.Acts, pages 669, 671, 703, and 1936, 26 U.S.C.A. Int.Rev.Acts, pages 825, 826, 827, 868.[1] The sections referred to clearly evince the intention of Congress to tax as ordinary dividends distributions of corporate earnings to the full extent thereof unless made in liquidation within the statutory meaning of that term.

Dividends are included within the definition of gross income (section 22(a), and by section 22(d) are made taxable to shareholders as provided in section 115. This section provides the taxable result to follow the shareholders' receipt of distributions paid from earnings, commonly referred to as ordinary dividends, and the different result following the receipt of distributions in complete or partial liquidation. The term "dividend" is defined to mean any distribution made by a corporation to shareholders whether in money or other property, (1) out of earnings and profits accumulated after February 28, 1913,[2] or (2) out of earnings and profits in the taxable year without regard to the amount of earnings and profits at the time the distribution was made (section 115(a). For the purposes of the Acts every distribution is made out of earnings and profits to the extent thereof and from the most recently accumulated earnings and profits (section 115(b). Section 115(c) provides for the treatment for income tax purposes of amounts distributed in complete or partial liquidation. Amounts distributed in complete liquidation of a corporation are treated as in full payment in exchange of stock, and amounts distributed in partial liquidation of a corporation are treated as part or full payment in exchange of stock. A distribution of stock of a corporation is not treated as a dividend to the extent that it does not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution (section 115(f) (1). If a corporation cancels or redeems its stocks (whether or not such stock was issued as a dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents earnings or profits accumulated after February 28, 1913, is treated as a taxable dividend (section 115(g). And by section 115(h) of the Act of 1936 the distribution of its stock by a corporation to its shareholders, whether before, on, or after January 1, 1936, is not considered a distribution of earnings or profits if no gain to the shareholder is recognized by law, or if the distribution was not subject to tax in the hands of the shareholder because it did not constitute income to him within the meaning of the Sixteenth Amendment or because exempt to him under section 115(f) of the Revenue Act of 1934 or the corresponding provision of a prior revenue act.

When the appellee received additional shares of Charter Oak stock on the distribution of stock dividends from surplus, he received no income. Neither capital nor earnings came into his hands. The number of his shares was increased, but his pro-rata interest in both capital and earnings remained the same as before the distributions of stock dividends. Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570; Helvering v. Griffiths, 318 U.S. 371, 63 S.Ct. 636, 87 L.Ed. 843; Section 115(f) and (h). For corporate bookkeeping and, doubtless, by State law, earnings were transferred to capital, but for Federal taxation purposes the earnings of the corporation available for distribution as ordinary taxable dividends remained intact and undiminished. Section 115(h); Long v. Commissioner, 6 Cir., 155

---

[1] Subsections (a) and (d) of section 22 and subsections (b), (g), and (i) of section 115 of the Acts of 1934 and 1936 are identical. In the 1936 Act some changes from the text of the 1934 Act are made in subsections (a), (c), (f) (1), and (h) of section 115, but none of them are significant on the issues in this case. The language of section 115(h) of the Act of 1936 is quite different from that in section 115(h) of the Act of 1934. The 1936 Act, however, applies in this case.

In this opinion references are to the Act of 1936.

[2] Appellee does not contend that any part of the distributions were paid from corporate profits accumulated prior to March 1, 1913.

F.2d 847, 849; Beretta v. Commissioner, 5 Cir., 141 F.2d 452, 455; Wilcox v. Commissioner, 9 Cir., 137 F.2d 136, 139; Commissioner v. Estate of Bedford, 325 U.S. 283, 290, 65 S.Ct. 1157, 89 L.Ed. 1611; Chapman Price Steel Co. v. Commissioner, 7 Cir., 146 F.2d 189, 191; Robinette v. Commissioner, 9 Cir., 148 F.2d 513, 516; Compare Century Electric Co. v. Commissioner, 8 Cir., 144 F.2d 983, and United States v. Ogilvie Hardware Co., Inc., 67 S. Ct. 997, construing the word "deficit" and the phrase "accumulated earnings and profits", as used in section 501(a) (2) of the Revenue Act of 1942, amending section 26 (c) (3) of the Revenue Act of 1936, 26 U.S. C.A. Int.Rev.Acts, page 334; Bazley v. Commissioner, 67 S.Ct. 1489, 1491. The distributions received by the appellee in 1935 and 1936 were ordinary dividends within the meaning of the applicable revenues acts, paid from corporate earnings and profits, and to their full extent properly included in appellee's income for the years in question unless it can be said that they were distributions in liquidation.

In the District Court the appellee did not contend, and in fact could not have contended, that the distributions of 1935 and 1936 were made in contemplation of the complete liquidation of the corporation. The letter of the appellee to the company's stockholders explaining the reasons for the reduction in par value of the stock, while not conclusive, points to a continuation of the corporation's business. The business was continued for several years during which the corporation distributed dividends. The corporation was never liquidated, but was later sold as a going concern and, so far as the record reveals, is still in existence and engaged in business.

 The appellee contended and the trial court found that the distributions in question were distributions in partial liquidation. We think the court's conclusion was based on an erroneous interpretation of section 115(i). By this section the term "amounts distributed in partial liquidation" means "a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or re-demption of all or a portion of its stock." Since it is clear from the evidence that neither of the distributions in question was one of a series in complete cancellation or redemption of all of the company's stock, the precise question here is whether either distribution accomplished a complete cancellation or redemption of a part of the company's stock, or whether either was one of a series of distributions in complete cancellation or redemption of a portion of the stock.

To meet the statutory definition of "amounts distributed in partial liquidation" it is not necessary that the particular distribution involves winding up the business activity of the corporation, but it is required that the distribution be made in cancellation or redemption of a part of the corporation's capital stock unless at the time of distribution complete liquidation is under way. Stern v. Harrison, 7 Cir., 152 F.2d 321, 324; Yankey et al. v. Commissioner, 10 Cir., 151 F.2d 650, 652; R. D. Merrill Co. v. Commissioner, 4 T.C. 955, 967; Thornton v. Commissioner, 7 Cir., 159 F.2d 578, 579, 581. The mere reduction in the par value of outstanding shares is neither a complete cancellation nor redemption of a part or portion of the corporation's stock within the meaning of section 115(i). Beretta v. Commissioner, 1 T.C. 86, 96; R. D. Merrill Co. v. Commissioner, supra, page 967 of 4 T.C.; Long v. Commissioner, 5 T.C. 327, 334; Beretta v. Commissioner, supra, 141 F.2d at page 455; Wilcox v. Commissioner, supra, page 139 of 137 F.2d; 1 Merten's Law of Federal Income Taxation, § 9.83, p. 551. In the present case distributions were not made contemporaneously with the reduction in par value of the Charter Oak stock. All that was accomplished by that transaction was to transfer to surplus the capitalized earnings of prior years. After the reduction in par value of its stock the pro-rata interest of the shareholders in the company's assets was the same as it was before the reduction. The declared par value of their shares was $70 instead of $100, but the actual value of the shares was apparently the same as before the reduction in par value. The business of Charter Oak continued. The distributions from surplus in subsequent

years must be regarded as ordinary dividends paid from corporate earnings and taxable as such.

The judgment of the District Court is reversed.