**GENERAL BANCSHARES CORPORATION, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 17313.

United States Court of Appeals Eighth Circuit.

Jan. 28, 1964.

Edward L. Rogers, Atty., Dept. of Justice, Washington, D. C., make argument for the respondent and filed brief with Louis F. Oberdorfer, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., and Meyer Rothwacks and David O. Walter, Attys., Dept. of Justice, Washington, D. C.

Owen T. Armstrong, St. Louis, Mo., argued and Henry C. Lowenhaupt, Lowenhaupt, Chasnoff, Freeman & Holland, St. Louis, Mo., on the brief, for petitioner.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and HANSON, District Judge.

BLACKMUN, Circuit Judge.

The Tax Court has held that certain 1957 costs incurred by General Bancshares Corporation in issuing non-taxable stock dividends are not deductible as ordinary and necessary business ex-

penses under § 162(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 162 (a). Judge Scott's opinion, not reviewed by the full court, is reported at 39 T.C. 423. The taxpayer has petitioned for review.

The facts are stipulated. Bancshares, formerly known as General Contract Corporation, was incorporated in Missouri in 1946. It had outstanding common shares and three classes of par value preferred. Its primary assets were stocks in controlled corporations in the banking and insurance fields; the major part of its income consisted of dividends from these stocks. The taxpayer maintained its books and filed its income tax returns on the accrual method of accounting and on the basis of the calendar year.

Bancshares paid 2% stock dividends on its common in 1950, in October 1955, in April 1956, and in October 1956, and one of 6% in 1951. In its returns as filed it deducted any expenses incurred in issuing these stock dividends. We assume, although the record does not so disclose, that these deductions were not challenged by the Commissioner.

In 1957 the taxpayer again issued stock dividends on its common. The first was in April and the second was in October. Each was 2%. The taxpayer incurred expenses, all properly accruable in that year, in the issuance of these stock dividends.[1] Bancshares' 1957 return showed an increase during the year of $174,775 in its outstanding common stock capital account and a charge to earned surplus during the year of $174,-736 for stock distributed to shareholders. The slight difference between these figures is not explained.

The problem before us, therefore, is whether these 1957 stock dividend costs qualify as "ordinary and necessary expenses" of the business deductible under § 162(a). The Tax Court concluded that the stock dividends "have caused a change in petitioner's capital structure, even though no new capital was acquired" and that the expenditures were "capital in nature and not deductible".

It seems a little surprising that an issue of this kind arises so late and only after the nation has lived with the federal income tax for more than half a century. The Tax Court, however, notes that the case is one of first impression. Indeed, it so appears to be, although now there are at least two later Tax Court cases, both decided by Judge Withey, which follow this one and are on appeal elsewhere. United Industrial Corp. & Subsidiary Companies, 21 T.C.M. 1482, T.C. Memo 1962-280, on petition for review to the Sixth Circuit; Arkansas Louisiana Gas Co., 22 T.C.M. 331, T.C. Memo 1963-77, on petition for review to the Fifth Circuit. This tardy development of the issue may, of course, be due to taxpayers' failing to claim such expenses as deductions; or, if asserted, to their escaping notice on audit; or to a change in attitude, undisclosed here, on the part of the Internal Revenue Service. In any event, the Service's position since 1960 is clear for Rev.Rul. 60-254, 1960-2 C.B. 42, promulgated about the

---

1. The parties by their stipulation describe many of these in the aggregate "as expense of issuing stock dividends" and the others as "expenses incurred in connection with stock dividends paid". Actually they consisted of stationery and printing costs, postage, stock exchange listing costs, and transfer agent and registrar expenses and fees. Certain of the transfer agent and registrar items were allowed on audit. We feel that all the remaining expenses stand or fall together in the determination of the issue whether stock dividend expense is deductible. We therefore regard as of no weight here the taxpayer's suggestions that, because some of these expenses were for "personal services actually rendered", they are clearly deductible under § 162(a) (1), and that the Tax Court's disallowance amounts to an improper recognition of cost accounting. In any event, as the cases cited later in this opinion show, organizational expenses and others of comparable nature, although they include payments for personal services as, for example, attorney's fees, are not deductible under § 162(a). Frischkorn Real Estate Co., 21 B.T.A. 965, 969 (1930), dismissed on taxpayer's motion, 51 F.2d 1077 (6 Cir.).

time the issues in the present case were being drawn, flatly states:

> "Cost incurred by a corporation in connection with the issuance of its capital stock in payment of a stock dividend is not deductible as an ordinary and necessary business expense under section 162 of the Internal Revenue Code of 1954, since such cost is a capital expenditure."

The taxpayer argues that the Tax Court's relating the stock dividend expenses to organization expense, with consequent non-deductibility, is a mis-analysis; that on the decided cases that result is limited to expenditures incidental to an actual increase in capital assets; that non-deductibility does not ensue where there is no more than a change in capital stock account which, of course, does not accurately reflect underlying value anyway; that the stock dividends here added nothing to the taxpayer's capital assets but only affected the earned surplus and capital stock accounts on the liability side of the ledger; that the costs were incurred in "carrying on" the taxpayer's business, within § 162(a); that making a business grow is part of carrying it on; that the stock dividends were regular and not occasional, conserved cash, and served as a substitute for short term borrowing; and that the result reached by the Tax Court embraced cost accounting and was not to be given the income tax effect the court applied.

We agree with the Service and with the Tax Court. There is, of course, much to be said for the taxpayer's position. To the mind of a practical corporate officer or, as has sometimes been said, of the "hard-headed businessman", see 4 Mertens, Law of Federal Income Taxation, § 25.09, p. 34; Rittenberg v. United States, 267 F.2d 605, 608 (5 Cir. 1959), cert. denied 361 U.S. 931, 80 S.Ct. 369, 4 L.Ed.2d 353, the costs of the issuance of a stock dividend may seem just as current and, where stock dividends have assumed some aspect of regularity, as is apparently the case with this taxpayer and with many public utilities, just as ordinary and necessary as the expenses of a cash dividend or of a dividend which the shareholder may elect to receive in cash or in stock.

Whenever § 162(a) is at issue, however, we are reminded of Welch v. Helvering, 290 U.S. 111, pp. 114–115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933), and Mr. Justice Cardozo's observations there, that the "decisive distinctions are those of degree and not of kind"; that one "struggles in vain for any verbal formula that will supply a ready touchstone"; and that, in words of apparent wistful disappointment because of the lack of greater certainty, "The standard set up by the statute is not a rule of law; it is rather a way of life. Life in all its fullness must supply the answer to the riddle". So in approaching our problem here we must accept "life in all its fullness" as our standard. When we do so, we conclude that at this late date we are not free to depart from what we regard as established and controlling precedent differentiating between ordinary and necessary business expense, on the one hand, and something else, usually referred to as an expenditure to be capitalized, on the other, and that the expenses of a non-elective stock dividend are essentially capital in nature and are not deductible. We consider the following facts and precedents, some of the latter established only after extended litigation, to be indicators which compel the conclusion we reach:

1. It cannot be denied that the issuance of the stock dividends in 1957, irrespective of their tax consequence to the receiving shareholders, did effect a change in the capital structure of the taxpayer corporation. They embraced, in addition to the increase in the number of shares outstanding, conversions of part of the existing earned surplus into capital. The amounts so converted are unavailable, so far as corporation law is concerned, for the payment of ordinary dividends in the future. Eisner v. Macomber, 252 U.S. 189, 210–211, 40 S.Ct. 189, 64 L.Ed. 521 (1920); United States v. Zions Sav. & Loan Ass'n, 313 F.2d 331, 335 (10 Cir. 1963); Buckeye Sav. & Loan

Co. v. United States, 312 F.2d 912, 918 (Ct.Cls. 1963); United States v. Siegel, 52 F.2d 63, 65 (8 Cir. 1931), cert. denied 284 U.S. 679, 52 S.Ct. 140, 76 L.Ed. 574; 11 Fletcher, Cyclopedia Corporations (1958 Rev.), § 5362. Specifically is this so under Missouri law. V.A.M.S. § 351.-220, subdivision (3); Hayes v. St. Louis Union Trust Co., 317 Mo. 1028, 298 S.W. 91, 98, 56 A.L.R. 1276 (1927); Robert v. Mercantile Trust Co., 324 Mo. 314, 23 S. W.2d 32, 41 (1929). The stock dividends thus increased the taxpayer's capital and decreased its earned surplus. We must assume that these moves were made for positive reasons directed toward the company's betterment. Initially, and offhand, therefore, the expenditures in connection with the stock dividends seem to smack of a capital or permanent or betterment nature related more to the type of item exemplified by the prohibitions of § 263(a) of the 1954 Code,[2] than to expenses having to do with the daily carrying on of a business and the production of current income to which § 162(a) has application.

2. Other costs which have to do basically with corporation structure have been denied status as ordinary and necessary business expenses under § 162(a) and its predecessors. Significant examples are:

(a) Organization expenditures (except as now specifically amortizable over a limited period by § 248). Grain King Mfg. Co., 14 B.T.A. 793, 796 (1928), petition for review dismissed on jurisdictional grounds, 47 F.2d 608 (2 Cir.); Estate of George B. Leonard Holding Corp., 26 B.T.A. 46, 47 (1932); see Motion Picture Capital Corp. v. Commissioner, 80 F.2d 872, 873 (2 Cir. 1936).

(b) Expenditures of reorganizing or recapitalizing. Gravois Planing Mill Co. v. Commissioner, 299 F.2d 199, 206 (8 Cir. 1962); International Bldg. Co. v. Commissioner, 199 F.2d 12, 26 (8 Cir. 1952), reversed on other grounds, 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182; Missouri-Kansas Pipe Line Co. v. Commissioner, 148 F.2d 460, 462 (3 Cir. 1945); Skenandoa Rayon Corp. v. Commissioner, 122 F.2d 268, 271 (2 Cir. 1941), cert. denied 314 U.S. 696, 62 S.Ct. 413, 86 L.Ed. 556.

(c) Expenditures in connection with the issuance or increase of non-dividend corporate stock. Motion Picture Capital Corp. v. Commissioner, supra, p. 873 of 80 F.2d; Simmons Co. v. Commissioner, 33 F.2d 75 (1 Cir. 1929), cert. denied 280 U.S. 588, 50 S.Ct. 37, 74 L.Ed. 637; Fishing Tackle Products Co., 27 T.C. 638, 645 (1957); Firemen's Ins. Co., 30 B.T.A. 1004, 1014 (1934); Baltimore & Ohio R. R., 29 B.T.A. 368, 372 (1933), aff'd 78 F.2d 460 (4 Cir.); Borg & Beck Co., 24 B.T.A. 995, 1004 (1931); Emerson Electric Mfg. Co., 3 B.T.A. 932, 935 (1926).

The rationale behind these decisions appears to us to be that the purpose for which the expenditure is made has to do with the corporation's operations and betterment, sometimes with a continuing capital asset, for the duration of its existence or for the indefinite future or for a time somewhat longer than the current taxable year, in contrast to being devoted to the income production or other needs of the more immediate present. See Motion Picture Capital Corp. v. Commissioner, supra, p. 873 of 80 F.2d; First Nat'l Bank of St. Louis, 3 B.T.A. 807 (1926); 4 Mertens, Law of Federal Income Taxation, § 25.35. The Ninth Circuit recently emphasized this when it said, "Expenses incurred for the purpose of changing the corporate structure for the benefit of future operations are not ordinary and necessary business expenses * *." Farmers Union Corp. v. Commissioner, 300 F.2d 197, 200 (9 Cir. 1962), cert.

---

2. "§ 263. Capital expenditures
 (a) General rule.—No deduction shall be allowed for—

(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. * * *"

denied 371 U.S. 861, 83 S.Ct. 117, 9 L. Ed.2d 99.

3. Although the taxpayer argues to the contrary, it has been held that, where the expenditures have not resulted in the acquisition or increase of a corporate asset, the result is still the same and these expenditures are not, because of that fact, deductible as ordinary and necessary business expenses. Baltimore & Ohio R. R., supra, p. 373 of 29 B.T.A.; Holeproof Hosiery Co., 11 B.T.A. 547, 556 (1928). We observe in this connection, however, that the Second Circuit, in denying deductibility of reorganization expenses, has said: "They are instead a part of the expenditure needed to give the corporation an intangible asset which we may call its altered corporate structure * * *." Mills Estate, Inc. v. Commissioner, 206 F.2d 244, 246 (2 Cir. 1953).

█ 4. Section 263, with its denial of deductibility for specified capital expenditures, and § 162(a), with its grant of deductibility for ordinary and necessary business expenses, are not, of course, mutually exclusive. Neither are they together all inclusive. Section 263 obviously is not in itself an exclusive list of non-deductible capital expenditures. Further, § 162 requires for deductibility not only that an item be a business expense but that it be "ordinary and necessary". Baltimore & Ohio R. R., supra, pp. 372–373 of 29 B.T.A.; Holeproof Hosiery Co., supra, p. 556 of 11 B.T.A.; Dome Mines, Ltd., 20 B.T.A. 377, 378 (1930); 4 Mertens, Law of Federal Income Taxation, § 25.20, pp. 76–77.

5. Section 248 was new in the 1954 Code. It permits, under stated conditions, the amortized deduction of a corporation's organizational expenditures. At the Committee hearings on the 1954 Code suggestions were made that this new section be drawn to apply to stock dividend expenditures. H.R. No. 1337, 83d Cong., 2d Session, p. A64, 3 U.S.Code Congressional and Administrative News (1954) pp. 4017, 4201, flatly states, however, that "Expenses of issuing shares of stock * * * are a reduction of the proceeds derived from the issue, and are properly chargeable against the paid-in capital. Such expenses are not organizational expenditures within the meaning of section 248 * * *." Although this refers to the situation where there are proceeds derived from a stock issue, it clearly discloses, it seems to us, the attitude of Congress as to the nature of stock issuance expenditures and congressional opposition to their deductibility even under the relief provisions of the new § 248.

6. The fact that these stock dividends, by § 305(a), were not taxable to the shareholder recipients and, by § 312(d) (1) (B), did not for income tax purposes reduce the amount of available earnings to be considered in determining the taxability of future distributions to shareholders, in contrast to their capitalization for corporate accounting purposes, is of no significance. This precise situation is not unknown. Sheehan v. Dana, 163 F.2d 316, 318, 173 A.L.R. 684 (8 Cir. 1947); Long v. Commissioner, 155 F.2d 847, 849, 167 A.L.R. 550 (6 Cir. 1946); United States v. Lesoine, 203 F.2d 123, 125 (9 Cir. 1953); see Commissioner v. Estate of Bedford, 325 U.S. 283, 290, 65 S.Ct. 1157, 89 L.Ed. 1611 (1945).

██ Perhaps all this merely brings us back to where we started, namely, that, as the Supreme Court said in Welch v. Helvering, supra, in cases in this area we are necessarily dealing in matters of distinction in degree and not in kind; that there is no readily available formula; and that the standard is "a way of life". Having in mind that the taxpayer's task here is to qualify its expenditures not only as non-capital in nature but as ordinary and necessary business expenses under § 162(a); that it is not enough to demonstrate that they possess some characteristics different from the more commonly accepted capital expenditures (such as those directed toward the acquisition of a recognizable and tangible corporate asset); that the burden of proof is on the taxpayer, Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943); Mississippi River Fuel Corp. v.

Koehler, 266 F.2d 190, 196 (8 Cir. 1959), cert. denied 361 U.S. 827, 80 S.Ct. 75, 4 L.Ed.2d 70; that the determination whether these expenditures are ordinary or necessary business expenses is a question of fact, Commissioner v. Heininger, 320 U.S. 467, 475, 64 S.Ct. 249, 88 L.Ed. 171 (1943); Long v. Commissioner, 277 F.2d 239, 240–241 (8 Cir. 1960); and that the established precedents uniformly appear as indicators of non-deductibility, we hold that the stock dividend expenses in this case are not deductible from gross income. If a different conclusion is to be reached, that end is for the Congress and not for the federal courts. The decision of the Tax Court is therefore

Affirmed.