**THOMPSON & GREEN MACHINERY COMPANY, Inc.**

**v.**

**UNITED STATES of America.**

**Civ. A. No. 5783.**

United States District Court,
M. D. Tennessee,
Nashville Division.

Feb. 25, 1971.

Olin White, Nashville, Tenn., for plaintiff.

Charles H. Anderson, U. S. Atty., Nashville, Tenn., L. A. Smith, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM

MORTON, District Judge.

This is an action to recover income tax paid for the year 1966 after assessment by the Internal Revenue Service. Proper claims for refund were filed, denied, and this suit was timely commenced.

Two questions are involved, i. e.:

(1) Whether legal and accounting fees incident to certain corporate mergers

and purchase of minority stockholders are deductible as ordinary and necessary business expenses.

(2) Whether certain sums paid to plaintiff by county governments were tax-exempt interest.

## QUESTION 1

Prior to the taxable year 1966, Thompson & Green Enterprises, Inc. (hereinafter referred to as "Enterprises") was a holding company owning 85% of the outstanding capital stock of General Truck Sales (hereinafter referred to as "Truck") and 90% of the outstanding capital stock of Thompson & Green Machinery Company (hereinafter referred to as "Machinery"). The latter company in turn owned 100% of the outstanding capital stock of Thompson & Green Tractor Company, an Alabama corporation (hereinafter referred to as "Tractor"). Enterprises, Truck, and Machinery were Tennessee corporations doing business in Nashville, Tennessee. Machinery was the Caterpillar franchise distributor in Nashville and Tractor was such a distributor in Alabama.

Caterpillar suggested to or notified Machinery that it should sever its connection with Tractor for the reason that Caterpillar did not desire that the same interests represent it as franchise dealer in two separate and distinct territories.

Thereafter, Enterprises was merged into Machinery, Machinery spun off Truck and Tractor by exchange of stock and notes (One Million Twenty-Five Thousand Dollars in notes payable to three former stockholders), with the result that Truck and Tractor are independently owned corporations and have no common management with Machinery.[1] The dissident stockholders, for their stock ownership in Machinery and Enterprises, received notes and stock in Truck. Presumably, since Machinery had no further common interest with Tractor, Caterpillar was mollified. Machinery is still the franchise distributor

for Caterpillar in Nashville, Tennessee, and Tractor is such in Alabama.

 Certain fees for attorneys and accountants were incurred in effecting the above reorganization and were deducted by Machinery as ordinary and necessary business expense. The propriety of this action is at issue.

The burden is on the taxpayer to qualify its expenditures not only as non-capital in nature but as ordinary and necessary business expenses under § 162(a) of the 1954 Internal Revenue Code. General Bancshares Corp. v. Commissioner of Internal Revenue, 326 F.2d 712, 716 (8th Cir. 1964). A detailed listing of certain categories of certain deductible and nondeductible expenses on reorganization of a corporation is contained in the cases of Gravois Planing Mill Co. v. Commissioner of Internal Revenue, 299 F.2d 199 (8th Cir. 1962) and General Bancshares Corp v. Commissioner of Internal Revenue, *supra*.

It appears, however, that in those cases where there is both a partial liquidation and a corporate reorganization, the question becomes a matter of degree (General Bancshares Corp., *supra*). The transaction is to be viewed as a whole and its dominant aspect is to govern the tax character of the expenditure (Gravois Planing Mill Co., *supra*).

 Where there is a change in the corporate structure for the benefit of future operations (Mills Estate v. Commissioner of Internal Revenue, 206 F.2d 244 1st Cir. 1953), or for the improvement of a tangible or intangible asset for the benefit of the taxpayer's future operation (Transamerica Corp. v. United States, 254 F.Supp. 504, N.D.Calif.1966), fees incident thereto are not deductible as ordinary and necessary business expense.

At the hearing the reasons advanced for the corporate reorganization were the suggestion of Caterpillar and the satisfaction of the dissident stockholders.

---

1. Attached is the schedule showing merger steps as to Machinery, Schedule 15, pages

1 and 2. Class A stock was voting stock; Class B was non-voting stock.

In the communication with the Treasury Department for a ruling of non-taxability of the reorganization, other reasons were stated; i. e., separation of Truck, a General Motors franchise, from Machinery, a Caterpillar franchise; and the obtaining of a guaranteed income for a major stockholder.

It appears to the Court from an evaluation of all of the evidence that the motivating and dominant reason for the recited activities was the maintaining of the Caterpillar franchise and its continued value to Machinery. If this be so, then the corporate reorganization was effected "for the improvement of a tangible or intangible asset." As such, the expenses therefor would not be deductible as an ordinary and necessary business expense under the holding of the *Mills Estate* and other cases hereinbefore cited.

However, the principal reason that the taxpayer must fail is that it has failed to produce satisfactory evidence to qualify its expenditures as an ordinary and necessary business expense.

## QUESTION 2

■ Machinery, the plaintiff, sold and leased equipment to various governmental agencies. Some of these arrangements consisted of outright sales and simple leases. However, in some instances, a prior arrangement was made with the understanding that when all lease payments were made, title would pass to purchaser. The lease by its terms was a simple lease with no option to purchase, but the purchase order, executed prior to or simultaneously with the lease, had language therein which granted a purchase option or it contained such language as "rental purchase," depending on the particular form of purchase order used.

Involved in this case are three arrangements in the "rental purchase" category. As was customary in such cases, Machinery, on payment of the last due payment by the governmental subdivision (in this instance, a county), allocated the difference between the sale price and the total amount of the rental payments as exempt interest, and paid no tax thereon.[2, 3]

The Government, relying on the historical requirement that, absent budget allocations, a local subdivision of the State of Tennessee can only borrow money when so authorized by proper action of its governing body, asserts that no loan was made to the counties in question and thus no charge for interest was justified. Further, the Government asserts that no interest was actually paid.

No proof of action or lack of action by the governing boards of the counties (county court, county commissioners, etc.) was introduced.

Absent such proof, this Court cannot assume that a county official, in making the arrangement here involved, violated his duty. Whitehouse Gas Utilities District v. Cross Plains N. G. U. District, 445 S.W.2d 459 (Tenn.Ct.App., 1969).

Looking to the substance of the transaction, the oral arrangement between the parties, the modern methods of doing business, the universal acceptance of lease purchase or rental purchase arrangements, the general knowledge that such arrangements have a financing padding included therein, the Court finds that interest was contemplated, was included and was paid. Therefore, taxpayer properly treated such padding as exempt interest.

A judgment will be prepared by the attorney for the Government incorporating the above conclusions.

---

2. This allocation was made with the knowledge and consent of the county officials who knew at the time of the rental that such a procedure would be followed.

3. The amount added in lease payments amounted to 5% simple interest.